STATE of Missouri, Respondent,

v.

Nicholas McGIRK, Appellant.

No. WD 56221.

Missouri Court of Appeals,
Western District.

Aug. 24, 1999.

Marvin W. Opie, Tipton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., LOWENSTEIN and RIEDERER, JJ.

ALBERT A. RIEDERER, Judge.

Nicholas McGirk appeals from his conviction under section 565.084 of tampering with a judicial officer. We affirm.

### Facts

On the morning of April 16, 1997 at approximately 10:45 a.m., after having previously read in the newspaper that his friend, Earl Paxton, had been arrested on suspicion of a felony, Appellant walked into the Pettis County Courthouse. Appellant approached Linda Rodewald, a deputy clerk for the Honorable Gary W. Fleming, to inquire as to whether Paxton was in jail and if any charges had been filed against him. Rodewald could not find any information on Paxton, so she called the jail and was told that Paxton was in custody on a "twenty hour hold." Rodewald then told Appellant to check with the prosecutor's office to see what charges would be filed against Paxton. Appellant replied, "No, I'll talk to Judge Fleming." Appellant then walked out of Rodewald's office and into another office where Judge Fleming and two other court clerks were at the time. Deputy Sherriff Ray Ditzfeld followed Appellant into the office, and Prosecuting Attorney Jeff Mittelhauser walked

into the office after Appellant as well. Appellant asked Judge Fleming if they could talk privately in chambers about Earl Paxton's arrest. Judge Fleming responded that they could not meet privately, nor could he share any arrest information with Appellant. Appellant was then heard to say in a low tone to Judge Fleming, "I'll take care of you." Thereafter, Appellant stood staring at the Judge for about a minute before walking out of the courthouse and driving away.

On July 16, 1997, Appellant was charged by indictment with the Class C felony of tampering with a judicial officer in violation of section 565.084. On March 31, 1998, a bench trial commenced in the Circuit Court of Pettis County with the Honorable Vernon Scoville presiding. On April 1, 1998, the court found Appellant guilty as charged. On August 10, 1998, the court issued its judgment sentencing Appellant to four years imprisonment, and it suspended the sentence and placed him on five years probation. This appeal ensued.

### I.

In his first point on appeal, Appellant claims the evidence was insufficient to sustain his conviction of tampering with a judicial official under section 565.084 because there was no judicial proceeding pending against his friend, Earl Paxton, at the time Appellant made his comments to Judge Fleming. Appellant claims that an element of section 565.084 is therefore unproven, and since the state has the burden of proving each and every element of a criminal offense, its failure to do so mandates a reversal of his conviction. *State v. Fosdick*, 776 S.W.2d 54, 55 (Mo.App.1989). Although Appellant couches his complaint as insufficient evidence, he is really arguing that a pending judicial proceeding is an element of the offense charged. We review both issues.

In reviewing the sufficiency of evidence, we determine whether there is enough evidence from which a reasonable trier of fact

might have found the defendant guilty beyond a reasonable doubt. *State v. Hunter,* 939 S.W.2d 542, 544 (Mo.App.1997). This appellate court must accept as true all of the evidence and inferences favorable to the state and disregard all evidence and inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo.App.1993).

At the time of Appellant's offense (April 16, 1997), section 565.084 provided:

1. A person commits the crime of tampering with a judicial officer if, with the purpose to harass, intimidate or influence a judicial officer *in an official proceeding,* he:

   (1) Threatens or causes harm to such judicial officer or members of such judicial officer's family;

   (2) Uses force, threats, or deception against or toward such judicial officer or members of such judicial officer's family;

   (3) Offers, conveys or agrees to convey any benefit direct or indirect upon such judicial officer or such judicial officer's family;

   (4) Engages in conduct reasonably calculated to harass or alarm such judicial officer or such judicial officer's family, including stalking pursuant to section 565.225.

2. A judicial officer for purposes of this section shall be a judge, arbitrator, special master, juvenile court commissioner, state probation or parole officer, or referee.

3. A judicial officer's family for purposes of this section shall be:

   (1) His spouse; or

   (2) His or his spouse's ancestor or descendant by blood or adoption; or

   (3) His stepchild, while the marriage creating that relationship exists.

   4. Tampering with a judicial officer is a class C felony.

Appellant argues that, under section 575.270, the witness tampering statute, the State is required to prove that a judicial proceeding was pending at the time of the tampering offense and that, therefore, the same is required under section 565.084. Section 575.270 provides:

1. A person commits the crime of "tampering with a witness" if, with purpose to induce a witness or a prospective witness *in an official proceeding* to disobey a subpoena or other legal process, or to absent himself or avoid subpoena or other legal process, or to withhold evidence, information or documents, or to testify falsely, he:

   (1) Threatens or causes harm to any person or property; or

   (2) Uses force, threats or deception; or

   (3) Offers, confers or agrees to confer any benefit, direct or indirect, upon such witness; or

   (4) Conveys any of the foregoing to another in furtherance of a conspiracy. (emphasis added)

As Appellant correctly notes, under section 575.270, the existence of a pending official proceeding is a material element of the offense. *State v. Todd,* 805 S.W.2d 204, 206 (Mo.App.1991). Appellant contends that, since the same phrase "in an official proceeding" is used in section 565.084, the existence of a pending official proceeding is a material element of that offense. We disagree. The 1997 amendment to section 565.084, coupled with the verdict-directing instruction applicable to the statute, shows that the legislature did not intend for pendency of an official proceeding to be an element of the offense under section 565.084.

In its 1997 session, after Appellant's alleged offense, the Missouri Legislature amended subsection 1 of section 565.084 by replacing the words "in an official proceeding" with "in the performance of such officer's official duties" so that the statute thereafter read as follows:

1. A person commits the crime of tampering with a judicial officer if, with the purpose to harass, intimidate or

influence a judicial officer *in the performance of such officer's official duties,* he:

Section 565.084.1

This change demonstrates the legislature's intent to protect a judicial officer from those who would try to harass, intimidate or unduly influence him or her in performing his or her official functions, whether that function was an official proceeding or some other function.

▮ "While an amendment to a statute must be deemed to have been intended to accomplish some purpose, that purpose can be clarification rather than a change in existing law." *Flipps Nine, Inc. v. Missouri Property and Casualty Ins. Guaranty Ass'n,* 941 S.W.2d 564, 568 (Mo.App. 1997). Such is the case here. The 1997 amendment to section 565.084.1 provides a broader prohibition than does the previous version of the statute, presumably because the legislature intended to expand the acts which would violate the statute, thus clarifying its intent that violations could not be exculpated merely because they occurred before an official proceeding began.

The verdict-directing instruction for the witness tampering statute, section 575.270, requires that the person tampered with was a witness (or prospective witness) *"in* [an official proceeding]" and "that the defendant so acted with the purpose to influence [the witness] ... in connection with such official proceeding." MAI–CR 3d 329.86 (emphasis added). In contrast, the verdict-directing instruction for section 565.084 only requires that the person tampered with was a judicial officer and "that the defendant so acted with the purpose to [harass, intimidate or influence him] in an official proceeding." MAI–CR 3d 329.85. The instruction does not contain any further requirement that the person tampered with be a judicial officer in a pending official proceeding. There is a good reason for this distinction. A person is not a witness if there is no official proceeding and only becomes a witness when there is an official proceeding. A judicial officer, by contrast, always remains so and does not become less so because an official proceeding is not underway. One may harass a judicial officer about a judicial proceeding to be had in the future.

Absurd results would surely follow if we interpreted section 565.084 to apply only in cases where an official proceeding had already begun at the time of the alleged act. The State need only prove that Appellant intended the effect of his words would be felt in an official proceeding. Viewing the record in a light most favorable to the verdict, the evidence shows that Appellant knew both that the filing of charges against his friend Paxton was imminent or completed, and that Judge Fleming would likely have some involvement in adjudicating Paxton's case. It would be absurd then to place Appellant outside the purview of section 565.084 merely because Paxton's charges may have been filed moments after the incident between Appellant and Judge Fleming. Appellant's comment to the Judge would have had the same effect of influencing the Judge in the Paxton case regardless of whether it was made before or after charges were filed. Moreover, again viewing the record in the light most favorable to the verdict, the evidence reflects that charges against Paxton were actually filed before the incident occurred. Judge Fleming's clerk, Donna Gary, testified that prosecuting attorney Mittelhauser had "just filed some paperwork with [her]" before the moment she saw Appellant walk into the office. We hold that section 565.084 does not require proof that an "official proceeding" is pending at the time of the alleged offense. Given our holding, there is sufficient evidence for a reasonable juror to find Appellant guilty beyond a reasonable doubt. Appellant's first point is denied.

**II.**

▮ Appellant's second point on appeal is difficult to discern, but we conclude that he claims section 565.084 is unconstitutionally "vague, overbroad, indefi-

nite...." Specifically, he cites *State v. Swoboda*, 658 S.W.2d 24 (1983) in arguing that statutes abridging speech are constitutional only to the extent that they prohibit only that speech which is likely to incite others to immediate violence. Thus, he claims in his appellate brief, section 565.084 is overbroad because the statute "can encompass virtually any expletive unreasonably and knowingly uttered at a high volume and with high intensity, so long as a complainant is alarmed." Appellant additionally claims the statute is overbroad because it prohibits something less provocative than "fighting words," and because speech must incite imminent lawless action before it can be prohibited, citing *Hess v. Indiana*, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973). Appellant likens his case to the case of *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). In that case, the defendant, Cohen, was convicted under a California statute of the offense of disturbing the peace after he had entered a courthouse donning a jacket bearing the words "Fuck the Draft." The United States Supreme Court, however, reversed Cohen's conviction saying that "the State may not, consistently with the First and Fourteenth Amendments, make the simple public display here involved of this single four-letter expletive a criminal offense." *Id.* 403 U.S. 15, 91 S.Ct. at 1789. It is not helpful merely to say this case is like *Hess* or *Cohen*, absent some analysis of why those cases might be instructive in our current situation. We examine therefore whether the statute at issue here falls within the class of prohibitions allowed under the First Amendment.

▌ In view of the First Amendment, "the government has no power to restrict an expression because of its message, its ideas, its subject matter, or its content." *Police Department v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290[3], 33 L.Ed.2d 212, 216[3] (1972). However, fighting words aside, in limited circumstances the government may regulate protected areas of speech when there is an overriding and compelling state interest in doing so. *State v. Koetting*, 691 S.W.2d 328, 331 (Mo.App.1985). Such is the case here. The State of Missouri unquestionably has a compelling interest in ensuring that its judicial servants are able to execute their functions without fear of threats, intimidation and harassment. Little else is more fundamental to a free society.[1] That is what the section 565.084 prohibition ensures. Thus, *Cohen* and *Hess* are not applicable because they do not involve a compelling state interest.

Appellant's words, "I'll take care of you" were not a mere expression of his opinion or feelings. Rather, they were a threat aimed at a particular individual, Judge Fleming. Section 565.084 does not restrict certain "speech" because of its message or content. Instead, it enjoins certain speech because of the impact it is intended to have on the person to whom it is directed. Under the statute, a defendant must engage in conduct reasonably calculated to harass or alarm a judicial officer, and the defendant must do so with the purpose to harass, intimidate or influence a judicial officer in a judicial proceeding. The plain language of section 565.084 would not have prohibited Appellant's statement to Judge Fleming if the statement were not reasonably calculated to alarm or harass him. Further, the statute does not prohibit a statement merely because it happens to alarm the person to whom it is directed.

---

1. Concerning "the benefits of the integrity and moderation of the judiciary," Alexander Hamilton wrote:

   Considerate men of every description ought to prize whatever will tend to beget or fortify that temper in the courts; as no man can be sure that he may not be tomorrow the victim of a spirit of injustice, by which he may be a gainer today. And every man must now feel that the inevitable tendency of such a spirit is to sap the foundations of public and private confidence and to introduce in its stead universal distrust and distress.

   *The Federalist, No. 78,* Edited by Clinton Rossitar, Mentor Press, p. 470.

Rather, it prohibits that statement only if its speaker made it with a purpose to harass, intimidate or influence the person in the context of a judicial proceeding. The plain meaning of the words of the statute is that it prohibits speech only to the extent that it offends the State's legitimate interest in securing its judicial proceedings. Therefore, the statute is not unconstitutionally overbroad. Point II is denied.

### III.

■ Appellant's third and fourth points are related in that they both deal with the same testimony by Judge Fleming about "facts that caused him to have concern about meeting in private with McGirk." Appellant objected on the grounds that the testimony was irrelevant and constituted proof of prior bad acts. He said:

> Objection, your Honor. It's not relevant to any matter here. I mean, what difference does it make why the judge wouldn't talk to him in private? It would have no impact. It's immaterial. I think this is an attempt to offer proof of other bad acts, which are beyond the scope of the pleadings. They're irrelevant and immaterial.

The objection was overruled, and the victim testified. Regarding this testimony, Appellant claims in his third point on appeal that allowing this testimony was an error because "evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Appellant's argument is that this testimony constituted the introduction of character evidence as circumstantial proof that an individual acted in conformity with a proven character trait. We disagree. This evidence was offered to prove the element of the crime that the acts of the defendant were done with a purpose to harass, intimidate or influence the victim. If the prosecutor did not show this element, then the Appellant would rightfully complain that he had not done

so. However, we need not reach the merits of this claim. It was not preserved by objection at trial. Appellant's objection was that this was a prior bad act, and Appellant is not permitted to change or broaden his objection on appeal. *State v. Williams*, 978 S.W.2d 454, 458 (Mo.App. 1998). Point III is denied.

### IV.

■ Appellant alleges in his fourth claim that the court erred by admitting Judge Fleming's testimony that Appellant had twice been previously charged with crimes—once for unlawful use of a weapon and once for misdemeanor assault. With respect to the weapon charge, the court, over Appellant's objection that it was evidence of prior bad acts, allowed Judge Fleming to testify, "it had to do with flourishing a gun in front of or toward a person . . . I had heard a preliminary hearing on that case and had made a ruling." With respect to the assault charge, Judge Fleming essentially testified that he recalled Appellant having been arraigned in his courtroom, but the charge "was not pursued." Appellant then immediately requested that that testimony be stricken, to which the court replied, "[t]he Court shall take the fact the relevance that the witness knew that the defendant had been charged with a prior assault, and other than that, will disregard the testimony." Appellant claims in his point relied on that the trial court erred in admitting this evidence because it was evidence of prior bad acts." But then Appellant appears to alter that claim, arguing "specific instances of conduct relating to other crimes, wrongs or acts is generally inadmissible to prove character as the basis of an inference that an accused acted in conformity therewith." This testimony was not offered to prove character.

■ Judge Fleming's testimony shows that, by virtue of Appellant having twice appeared before him on charges of violent crime, Appellant knew or should have known that Judge Fleming had some rea-

son to suspect Appellant was capable of being violent. Evidence of prior bad acts is inadmissible for the purpose of showing the propensity of the defendant to commit those acts. *State v. Morrison,* 980 S.W.2d 332, 334 (Mo.App.1998). However, evidence of prior bad acts is admissible if it is logically and legally relevant and tends to establish motive, intent, absence of mistake or accident, or a common plan or scheme. *Id.* Appellant's prior charges for assault and unlawful use of a weapon are relevant to the extent they infer that Appellant believed Judge Fleming would take him seriously and would be influenced by his threat. Thus, the evidence of prior charges tends to establish that Appellant's motive and intent for saying "I'll take care of you" was to alarm the Judge with the purpose of intimidating or influencing him. It tends to show that Appellant acted with purpose. The corresponding inference is that Appellant's conduct was reasonably calculated to alarm the Judge as prohibited under section 565.084.1(4) and that he acted with the purpose of influencing him in a judicial proceeding as prohibited under section 565.084.1. Point IV is denied.

For the foregoing reasons, the judgment of the Circuit Court is affirmed.

All concur.