STATE of Missouri, Respondent,

v.

Richard J. ADAMS, Appellant.

No. 27033.

Missouri Court of Appeals,
Southern District,
Division Two.

May 18, 2007.

Application for Transfer to Supreme Court
Denied June 7, 2007.

Application for Transfer Denied
Aug. 21, 2007.

# 177

Irene Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for Respondent.

Before GARRISON, J., BARNEY, J., and BATES, C.J.

PER CURIAM.

Richard J. Adams ("Appellant") appeals his convictions by a jury for two counts of the class C felony of tampering with a judicial officer, violations of section 565.084.[1] Following trial, Appellant was sentenced by the trial court to four years in the Missouri Department of Corrections on each count with the sentences to run consecutive and the execution of sentence suspended. Appellant alleges four points of trial court error, discussed below. We affirm.

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Tinsley*, 143 S.W.3d 722, 726 (Mo.App. 2004), the genesis of this matter arose

---

1. Section 565.084 states in pertinent part:
 1. A person commits the crime of tampering with a judicial officer if, with the purpose to harass, intimidate or influence a judicial officer in the performance of such officer's official duties, he:
 (1) Threatens or causes harm to such judicial officer or members of such judicial officer's family;
 (2) Uses force, threats, or deception against or toward such judicial officer or members of such judicial officer's family;
 (3) Offers, conveys or agrees to convey any benefit direct or indirect upon such judicial officer or such judicial officer's family;

 (4) Engages in conduct reasonably calculated to harass or alarm such judicial officer or such judicial officer's family, including stalking pursuant to section 565.225.
 2. A judicial officer for purposes of this section shall be a judge, arbitrator, special master, juvenile court commissioner, state probation or parole officer, or referee.
 * * *
 4. Tampering with a judicial officer is a class C felony.

 All statutory references are to RSMo 2000.

from charges being filed in Howell County, Missouri, against Appellant for speeding and failing to wear a seatbelt. In December of 2001, the prosecution of Appellant's traffic offenses was transferred, per his request for a change of venue, to Ozark County, Missouri.[2] The case was assigned to Ozark County Associate Circuit Judge John Jacobs ("Judge Jacobs").

A hearing was held on May 14, 2002, at which time Judge Jacobs took up several issues relating to Appellant's representation by the public defender's office and his desire to proceed *pro se*. Appellant requested he be able to represent himself because it had been his "experience of the State of Missouri where judges do just what they want to do and prosecutors will do what they want to do and disregard the rules of court." Appellant further stated that "[t]he record clearly shows there's corruption ... there [are] liars sitting in the offices of government, whether they be ... prosecutors or judges ... there's conspiracies going on in this whole nation...." The trial court denied the public defender's request to withdraw from Appellant's case [3] and denied Appellant's "request to participate as an active attorney in [his] own case." Judge Jacobs informed Appellant that he was "represented by counsel at [his] request. [He] do[es] not have a right to proceed *pro se* in that regard." (Emphasis added.)

On June 11, 2002, another hearing was held before Judge Jacobs on the public defender's motion to withdraw from Appellant's case. Appellant did not appear at this hearing, but sent a letter to his public defender indicating, among other things, that he would not be present at the hearing. The public defender appointed to represent Appellant made an oral motion for a continuance, which was denied by the trial court on the basis that no motion for continuance had been filed in the "proper form." Judge Jacobs then issued a warrant for Appellant's arrest for failure to appear.

On June 21, 2002, Appellant filed a motion entitled "Notice and Affidavit [Judge Jacobs] Deemed Incompetent to Hear and Try This Case" pursuant to section 545.660,[4] in which he alleged, *inter alia,* that Judge Jacobs was "preventing [him] from exercising rights secured by the state and federal constitutions;" "failing to recognize the conflict of interest, he, himself created ..." by refusing to grant the public defender's request to withdraw; "failing to consider other commitments [Appellant] may have made around the court date appearances already set in the court record [and] ordering a warrant for [Appel-

---

2. It appears that at most times throughout the matters underlying this appeal Appellant appeared *pro se* although at times he did have the assistance of a public defender who had been appointed to represent him. Additionally, it appears that at the beginning of the appeal process Appellant also appeared *pro se;* however, he was ultimately appointed a public defender to represent him before this Court.

3. Later, in the underlying jury trial, Judge Jacobs testified that "everyone is entitled to a change of judge or a new judge. I was the third judge on Mr. Adams' case."

4. Section 545.660 states in pertinent part:

When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases:
* * *
(3) When the judge is in any wise interested or prejudiced, or shall have been counsel in the cause; or
(4) When the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial.

lant's] arrest to punish [him] for something he, himself, had contribute[d] to;" and "showing an extreme prejudice towards [Appellant] and [his] rights."

On July 3, 2002, Appellant sent a letter to the circuit clerk's office in which he advised the clerk that he was "NOT being represented by an attorney in this case" and "cannot be forced to accept an attorney 'beholden to the state' and who has admitted a conflict of interest." The letter also set out the following:

Therefore, *any orders* issued to you and your office by one, [Judge] Jacobs, while acting under color of law ... *are to be disregarded.*

Furthermore, [Judge] Jacobs has proven himself to be incompetent, and pursuant to statute he has been declared incompetent, *nunc pro tunc,* from the date of his assignment to this case, making any and all orders made by [Judge] Jacobs null and void by law. *[Judge] Jacobs was to promptly recuse himself from this case for that reason just stated, and because I also have voiced my intentions of including [Judge] Jacobs, as a defendant, along with others, in a 42 USC 1983, 1985, and 1986 civil action* for violation of my rights with their bias and prejudicial conduct and unequal protection of the law towards me, *which also creates a conflict of interest for him to sit as judge.* Said bias and prejudice is well documented and will be exhibited in, and testified to by witnesses in my civil suite [sic].

Warning: Unless you want to be named as a defendant in my federal civil suit also, you will acknowledge my rights, and your duty to file each and every pleading/paper presented to you and your office pertaining to this case. If I do not receive any timely response from you regarding this matter I will construe your non-response as your acceptance to my offer to be included as a defendant in the civil action presently being prepared. Unlike [Judge] Jacobs, I offer due process before taking action.

(Emphasis added.)

Appellant was thereafter arrested on the warrant issued for his failure to appear before Judge Jacobs on June 11, 2002.

On August 13, 2002, a hearing was held on several motions filed by Appellant and on the lingering issue of the public defender's request to withdraw as counsel. Appellant advised Judge Jacobs at that time that he wished to represent himself "[w]ith the assistance of counsel of choice," and that he was not waiving his right to counsel. Judge Jacobs granted the public defender's request to withdraw from the matter.

Appellant then became "aggressive" with Judge Jacobs who asked Appellant to "sit down at one of the tables" and be quiet. According to Judge Jacobs, thereafter, "the hearing fairly quickly degenerated into shouts and unpleasantness...." He related that Appellant began shouting and yelling at him; again threatened to file a civil rights lawsuit against him; yelled that he "had no business being on the bench;" and shouted that he "was incompetent." Judge Jacobs had a bailiff remove Appellant from the courtroom.

Appellant was thereafter charged with two counts of tampering with a judicial officer pursuant to section 565.084.

Count I of the Fourth Amended Information involved the out-of-court conduct of sending the previously mentioned letter to the circuit clerk's office declaring that "any orders issued" by Judge Jacobs were to be "disregarded" and wherein Appellant voiced his intentions of including Judge Jacobs as a defendant in a federal lawsuit. Count I charged that "on or about July 3, 2002, ... [Appellant], with purpose to in-

fluence the Honorable John Jacobs, a judicial officer, in the case of *State of Missouri v. [Appellant]*, Case No. CR301-2T, an official proceeding, tampered with a judicial officer by threatening Judge Jacobs." Count II involved Appellant's in-court threats to sue Judge Jacobs. It recited that "on or about August 13, 2002, ... [Appellant], with purpose to influence the Honorable John Jacobs, a judicial officer, in the case of *State of Missouri v. [Appellant]*, Case No. CR301-2T, an official proceeding, tampered with a judicial officer by threatening Judge Jacobs."

On August 20, 2002, Judge Jacobs withdrew from the case involving Appellant's traffic offenses which arose in Howell County, Missouri. On December 27, 2004, Appellant's motion for change of venue in the instant case was granted and the matter was transferred to Camden County, Missouri.

A jury trial was held on the tampering charges in Camden County on April 4-6, 2005.[5] Regarding the July 3, 2002, letter, Judge Jacobs testified that he felt by sending the threatening letter Appellant "was trying to take over the case, to run it his way and to apply his rules to it rather than the rules of the state." Judge Jacobs also testified that at the August 13, 2002, hearing, Appellant began "ranting or shouting or yelling at [him] and attempting to steer[ ] the hearing in a direction that he chose." Judge Jacobs testified that regarding the incident in the courtroom he "felt threatened in a number of levels." He stated he "was concerned about the other people in the courtroom" and he "was concerned about the prospect of having to deal with [Appellant] more or less indefinitely in the context of a federal lawsuit." Judge Jacobs stated that "it's not

appropriate to use that sort of threat to try and achieve something in a case, badger a judge into taking rash actions or inappropriate actions."

Thomas Cline ("Mr. Cline"), a prosecuting attorney for Ozark County, testified he attended Appellant's November 14, 2002, preliminary hearing relating to the two tampering charges and that Appellant told Judge Jack Edwards that "the reason he threaten[ed] [Judge Jacobs] was to try to get Judge Jacobs to remove himself from the case. He thought [Judge Jacobs] would take himself off."

Mr. Cline was also present at the August 13, 2002, hearing presided over by Judge Jacobs. Mr. Cline testified that on that date Appellant "was very antagonistic and confrontational with [Judge Jacobs];" was "[v]ery antagonistic, combative, [and] hostile;" threatened the judge with a lawsuit; and had to be removed from the courtroom by a deputy.

During the underlying trial, Appellant testified on his own behalf. Appellant testified that sending the July 3, 2002, letter "was a very civilized way of removing a judge from [his] case," and he did so because he "believed [Judge Jacobs] was violating some of [his] constitutional rights." He stated that he "knew of no other remedy, at that time, except to sue. To sue to have an injunction placed against the judge from violating [his] rights. And you can do that in federal court." Appellant testified that he threatened to sue Judge Jacobs "for violation of [his] rights with [his] bias and prejudicial conduct and unequal protection of the law towards [him], *which also creates a conflict of interest for him to sit as a judge.*" (Emphasis added.) Appellant stated he "just threw that in

5. Appellant appeared *pro se* at trial and turned down the trial court's request to appoint a public defender to advise him because

of his "religious objection to the bar association and any members thereof."

saying that's just another reason why [Judge Jacobs] shouldn't be on the case."

Appellant also testified that he was "shocked" on August 13, 2002, when he appeared in court and realized Judge Jacobs was still assigned to his case. Appellant reiterated he "did the proper thing" in sending the letter in question to Judge Jacobs, wherein, he said he told Judge Jacobs, "I'm hereby putting you on notice that I'm going to sue you, actually I think I will name you as a defendant in a lawsuit violating my rights."

The jury found Appellant guilty on both counts of tampering with a judicial officer. The trial court sentenced Appellant to two consecutive terms of four years imprisonment with execution of the sentence suspended. This appeal by Appellant followed.

■ In his first point relied on, Appellant maintains the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence. Specifically, he asserts

> the State did not present sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that [Appellant] threatened Judge Jacobs, in that the evidence did not show that [Appellant's] words were 'threats' as contemplated by [s]ection 565.084. [Appellant] threatened to do a lawful act, filing a federal civil rights suit, and Judge Jacobs perceived the potential harm as an impediment to the court's performance of its duties and poor use of State resources.

"In reviewing the sufficiency of evidence, we determine whether there is enough evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt." *State v. McGirk*, 999 S.W.2d 298, 299–300 (Mo.App.1999). In our review, this Court must examine the elements of the crime and consider each in turn; review the evidence in the light most favorable to the judgment; disregard any contrary evidence; and grant the State all reasonable inferences from the evidence. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony. *State v. Nichols*, 20 S.W.3d 594, 597 (Mo.App.2000).

In *McGirk*, 999 S.W.2d at 299, the appellant was charged with tampering with a judicial official after telling a judge, "I'll take care of you." The Western District of this Court observed that "[t]he State of Missouri unquestionably has a compelling interest in ensuring that its judicial servants are able to execute their functions without fear of threats, intimidation and harassment. Little else is more fundamental to a free society. That is what the section 565.084 prohibition ensures." Id. at 302. "Section 565.084 does not restrict certain 'speech' because of its message or content. Instead, it enjoins certain speech because of the impact it is intended to have on the person to whom it is directed." *Id.* Under section 565.084, "a defendant must engage in conduct reasonably calculated to harass or alarm a judicial officer, and the defendant must do *so with the purpose to harass, intimidate or influence a judicial officer in a judicial proceeding.*" *Id.* (emphasis added). Continuing, the *McGirk* court related that section 565.084

> does not prohibit a statement merely because it happens to alarm the person to whom it is directed. Rather, it prohibits that statement only if its speaker made it with a purpose to *harass, intimidate or influence the person in the context of a judicial proceeding.* The plain meaning of the words of the statute is that it prohibits speech only to the ex-

tent that it offends the State's legitimate interest in securing its judicial proceedings.

*Id.* at 302–03 (emphasis added).

Here, Appellant argues his "threats" against Judge Jacobs "were simply advice of his intent to do a lawful action, the remedy prescribed by federal law for infringement of a citizen's constitutional rights. That he did so in a loud and angry manner in the *courtroom*, and in an obviously hostile letter before that, did not make his statements . . ." a threat.

In his brief, Appellant argues that his statements "do not reflect an intent to inflict harm or loss . . ." on Judge Jacobs. However, under the plain reading of the statute it is enough that Appellant's purpose was to *influence* Judge Jacobs's decision by threatening to sue him. Section 565.084.1(2) clearly sets out that a "person commits the crime of tampering with a judicial officer if, *with the purpose to . . . influence a judicial officer in the performance of such officer's official duties,* he . . . [u]ses . . . threats . . . against or toward such judicial officer. . . ." (Emphasis added.)

Here, Mr. Cline testified that on November 14, 2002, at the preliminary hearing, Appellant told the trial court "the reason he threaten[ed to sue] [Judge Jacobs] was to try to get Judge Jacobs to remove himself from the case. He thought [Judge Jacobs] would take himself off." Appellant also expressly testified that in sending the July 3, 2002, letter it was his attempt at "removing [the] judge from [his] case," and that he "did the proper thing" in sending the letter. Further, Appellant admitted telling Judge Jacobs on August 13, 2002, that he was "putting [Judge Jacobs] on notice that [he was] going to sue [him]. . . ."

Additionally, as stated in *McGirk,* section 565.084 "enjoins certain speech be-

cause *of the impact it is intended to have on the person to whom it is directed." Id.* at 302 (emphasis added). Judge Jacobs testified that regarding the incident in the courtroom on August 13, 2002, he "felt threatened in a number of levels." Judge Jacobs testified he felt Appellant's "threat" was an effort "to try and achieve something in [his] case. . . ." Judge Jacobs also testified that Appellant's July 3, 2002, letter, was an attempt by Appellant "to take over the case, to run it his way and to apply his rules to it rather than the rules of the state."

As in *McGirk,* 999 S.W.2d at 302, Appellant's threats to sue Judge Jacobs "were not a mere expression of his opinion or feelings. Rather, they were a threat aimed at a particular individual, [Judge Jacobs]" with the purpose of influencing Judge Jacobs to take certain action in his court case. Appellant's threat against Judge Jacobs was a personal threat made in an effort to sway Judge Jacobs's judicial decision in this matter. It was not the type of comment made in the normal course of a legal proceeding such as when an attorney informs the trial court he is going to file a writ or appeal a judge's decision. "The plain language of section 565.084 would not have prohibited Appellant's statement to Judge [Jacobs] if the statement were not reasonably calculated to . . . ," *id.,* influence Judge Jacobs to recuse himself from Appellant's case.

There was sufficient evidence in the present matter to support the trial court's decision. *State v. Wright,* 998 S.W.2d 78, 81 (Mo.App.1999). The trial court did not err in denying Appellant's motion for judgment of acquittal at the close of all the evidence. *See id.* Point One is denied.

■ Appellant's second point on appeal maintains the trial court abused its discretion in "not granting [Appellant's] motion

for a bill of particulars, in violation of Rule 23.04, and his right to due process...." He maintains he was prejudiced "because the Fourth Amended Information failed to sufficiently inform [Appellant] of the specific conduct underlying the charges to enable him to prepare a defense, in that both counts alleged only that he 'threatened' Judge Jacobs on the date specified."

The denial of a motion for a bill of particulars will not be disturbed unless there has been an abuse of discretion by the trial court. *State v. Sprinkle*, 122 S.W.3d 652, 658 (Mo.App.2003). "The trial court abuses that discretion when the denial of the motion results in the defendant's being insufficiently informed of the necessary factual details of the offense to prevent an adequate preparation of a defense." *State v. Larson*, 941 S.W.2d 847, 851 (Mo.App.1997); *see State v. Joos*, 120 S.W.3d 778, 781 (Mo.App.2003). "Even if the trial court abuses its discretion, the defendant still must show he was prejudiced by denial of that motion." *Sprinkle*, 122 S.W.3d at 658.

Pursuant to Rule 23.04, "a trial court has discretion to direct or permit the filing of a bill of particulars."[6] *State v. Mills*, 872 S.W.2d 875, 878 (Mo.App.1994). As explained in *Larson*, 941 S.W.2d at 851,

> A bill of particulars clarifies the charging document. It prevents surprise and restricts the [S]tate to what is set forth in the bill. The bill of particulars is not intended to make the [S]tate reveal for the defendant the details of the evidence on which it seeks to establish its case.

Here, as best we discern, Appellant takes issue with the trial court's purported failure to grant his "NOTICE AND DEMAND TO BE INFORMED OF NATURE AND CAUSE OF THE ACCUSATION (A/K/A BILL OF PARTICULARS)" filed on December 13, 2004, in Ozark County. This document begins with the following statements:

> This notice and demand to be informed of the nature as well as the cause of the accusation(s) is made pursuant to constitutional mandate *and it is not, in any way, to be construed to be pursuant to Rule 23.04* due to the fact that the Fourth Amended Information does not allege essential facts constituting the offense charged.

> Since you [Theodore Bruce ("Mr. Bruce"), the special prosecuting attorney assigned to this case,] have proven the proclivity of an adversary is to avoid responding timely to questions (Prov. 29:19) with the sole purpose to imprisoned [sic] me without me being duly informed of the nature and cause of the accusation(s) being charged against me (Acts 25:27), the following questions are answered in your behalf to prevent further delays from acts of incompetence and to preclude any stalemate arising from your failure to respond. You may wish to enter specific detailed objections that descend to the particulars of the nature of the accusation in the event we are not of one accord.

> Furthermore, in pursuance to Public Law 97–280 and with the Biblical exhor-

---

**6.** Rule 23.04 sets out:

When an indictment or information alleges the essential facts constituting the offense charged but fails to inform the defendant of the particulars of the offense sufficiently to prepare a defense, the court may direct or permit the filing of a bill of particulars. A motion for a bill of particulars may be

made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

All rule references are to Missouri Court Rules (2006).

tation to 'agree with thine adversary quickly whilst thou are in the way with him' (Matt. 5:25), and considering the manifold issues to be resolved in this instant case, I hereby extend this opportunity for us to agree (or disagree) in advance of any further litigation.

(Emphasis added.) Thereafter, Appellant's document contains a list of sixty-seven questions and accompanying answers, including the following verbatim examples:

Quest. 1: What charter created the [U]nited State of America?

Answer: *The Unanimous Declaration of the Thirteen united States of America,* also known as (a/k/a) the Declaration of Independence.

* * *

Quest. 3: What was the equal station imperative stated in the Declaration?

Answer: *'. . . and to assume among the powers of the earth, the separate and equal station'*

* * *

Quest. 19: In the case of *State v. [Appellant]* . . . was [Appellant] being afforded the right to defend himself by and through his right of speech?

Answer: *No. Evidence reflects that when [Appellant] attempted to exercise his right to defend himself by making timely objections, Judge John Jacobs use his hands to motion [Appellant] to stop speaking, and ordered [Appellant] to 'shut up and sit down.'*

* * *

Quest. 21: What appeared to be the reason for Judge Jacobs violating [Appellant's] constitutional right to defend himself against the charges in said case?

Answer: *The record and case docket sheet in said case reflects [Appellant's] raising issues [Judge] Jacobs did not want to address, such as the contractual* *and civil nature of the driver's license scheme.*

* * *

Quest. 39: Is there any cases where the higher courts have ruled that when a judge has been placed on notice of being disqualified from hearing and trying a case, that said judge loses all authority and jurisdiction in the matter except to 'promptly' set the case down for another judge to be assigned?

Answer: *Yes. There is a mountain of cases wherein the higher courts have ruled a judge loses authority and jurisdiction to hear and try a case under those circumstances. Also, the same courts have ruled that any action taken by such a judge other than disqualifying himself, is a nullity.*

* * *

Quest. 55: Then why did [Mr.] Cline file all those informations alleging [Appellant] notice [Judge] Jacobs of a lawsuit for the sole purpose to influence [Judge] Jacobs to do or not do something?

Answer: *There is a possibility than [Mr.] Cline is 'incompetent', i.e. mentally deranged, or it could be that [Mr.] Cline purposely abused process.*

* * *

Quest. 67: So this instant case against [Appellant] . . . involves constructive fraud, vindictiveness, conspiracy and racketeering?

Answer: *Yes, thus the evil and wicked nature of the accusation of the Special Prosecutor.*

Appellant concluded his document by writing:

Please take notice Mr. Bruce, that your failure as Special Prosecuting Attorney to timely enter specific and detailed objections descending to the nature as well as the cause of the accusation(s) being made against me, the foregoing answers

shall be construed as your admission to the true nature and cause of the accusation(s).

In our review, we first fail to see how the above document could be construed as a bill of particulars, in that Appellant requests little, if any, pertinent information relating to the charges against him. Second, he specifically states the document "is not, in any way, to be construed to be pursuant to Rule 23.04...." Third, the 67 questions and answers clearly show Appellant knew the nature and cause of the charges against him. In one question and answer exchange Appellant discusses the fact that he believes threatening to sue a judge is not an illegal action and cannot be considered a threat.[7] The trial court did not abuse its discretion in failing to grant Appellant's motion relating to this purported request for a bill of particulars. Point Two is denied.

■ In his third point on appeal, Appellant maintains the trial court plainly erred in sustaining the State's objection to certain questions Appellant asked of his witnesses Joseph Stokes ("Mr. Stokes") and Rizwan Ahad ("Mr. Ahad"). Specifically, Appellant argues

the testimony was logically relevant and admissible, in that the witnesses' knowledge that [Appellant] had been cooperative with judges in the past would lend credibility to his explanation that he told Judge Jacobs he was going to sue him only to try to get the judge to hear him fully, thus making it less likely the jurors would see that action as a threat. Moreover, the State opened the door when the prosecutor alleged in opening statement that disqualifying judges was part of [Appellant's] strategy to avoid trial, and when Judge Jacobs testified that one of the reasons he did not recuse himself at [Appellant's] request was that he was the third judge on the traffic case, implying previous disqualifications, when [Appellant] had not previously requested a change of judge in that case. Exclusion of this relevant and probative testimony in the facts and circumstances of [Appellant's] case resulted in manifest injustice.

Here, during Appellant's direct examination of Mr. Stokes the following exchange took place:

Appellant: Did I ever have, did you ever witness me having a problem with any

---

7. Specifically, Appellant's purported motion for bill of particulars states verbatim:

Quest. 33: Is it lawful for the people to place their public servants on notice of being sued for the sole purpose of remedying violations of their constitutional rights?
Answer: *Yes.*
Quest. 34: Is such notice a real/true/actual threat under the laws of Missouri and of the United States?
Answer: *No. Such a threat is nothing more than an invocation of official action*
Quest. 35: Is there mentioned in Missouri's criminal code/statutes that a threat of accusation, lawsuit or other invocation of official action is not a real/true/actual threat?
Answer: *Yes. The same can be found in Chapter 570.010 RSMo.*
Quest. 36: Have the higher courts ruled that giving notice, whether done orally or in writing, to public servants of wrongs committed by them, and the possibility of being sued for committing such wrongs is not a real/true/actual threat?
Answer: *Yes. There is a mountain of higher court rulings on that subject.*
Quest. 37: Are all state judges immune from being sued?
Answer: *No. Only the judges who conduct themselves within the scope of the law.*
* * *
Quest. 42: Is placing a public servant on notice of an invocation of an official action, i.e. lawsuit, considered conduct reasonably calculated for the purpose to harass or alarm?
Answer: *Not at all when the remedy sought to be obtain by virtue of a lawsuit is honestly claimed for a harm done in the circumstances to which the lawsuit relates.*

other judge where I had to go as far as wanting to sue them?

The State: Your Honor, past instances has nothing to do [with] whether or not his conduct in this case was criminal or not.

The Court: Sustained.

Thereafter, during his direct examination of Mr. Ahad, Appellant asked the following question:

Appellant: Did you ever have occasion where I had a real—well, let's put it this way. Compared to what we seen [sic], what was going on in Ozark with Judge Jacobs and myself ... Can you give a comparison on the relationship or the, just the way we handled things? Can you elaborate a little bit on whether or not the relationship between [a previous judge] and myself was much better than [Judge] Jacobs and myself?

The State: Object to that question. Foundation for it and more importantly, really is not relevant to any issue this jury has to decide in this case.

The Court: Sustained, as to the question about any other judge....

 Appellant concedes he did not properly preserve this point for appellate review and, therefore, requests plain error review under Rule 30.20. Plain error review is used sparingly and is limited to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. *State v. Ballard*, 6 S.W.3d 210, 214 (Mo.App.1999). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which *is error that is* 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or

miscarriage of justice has, indeed, occurred as a result of the error." *Roper*, 136 S.W.3d at 900. "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id.* "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

In the present matter, plain error review is not warranted in that Appellant initially failed to prove "error that is 'evident, obvious, and clear.'" *Id.* (quoting *Scurlock*, 998 S.W.2d at 586).

 The trial court is vested with broad discretion respecting the relevance and admissibility of evidence. *State v. Davis*, 186 S.W.3d 367, 373 (Mo.App.2005). "The trial court is given discretion 'because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant.'" *State v. Bowens*, 964 S.W.2d 232, 237 (Mo.App.1998) (quoting *State v. Langston*, 889 S.W.2d 93, 98 (Mo.App.1994)). "'There must be a clear showing of an abuse of discretion for an appellate court to interfere with a trial court's ruling on the admissibility of evidence.'" *Bowens*, 964 S.W.2d at 237 (quoting *State v. Neely*, 979 S.W.2d 552, 561 (Mo.App.1998)).

 Here, Appellant sought to introduce evidence relating to his previous interactions with other judges. Such evidence is neither legally nor logically relevant to the matter at hand. "Evidence is logically relevant if it tends to prove or disprove a disputed fact or corroborate relevant evidence and relates to a principle issue in the case." *Bowens*, 964 S.W.2d at 237. "'[F]or evidence to be considered legally relevant, its prejudicial effect must be outweighed by its probative value.'" *State v. Hayes*, 88 S.W.3d 47, 60 (Mo.App.

2002) (quoting *State v. Hatch,* 54 S.W.3d 623, 631 (Mo.App.2001)). "Even if logically relevant, the trial judge has discretion to limit such evidence if the judge believes the evidence is not legally relevant." *Bowens,* 964 S.W.2d at 238. "Because of concerns of prejudice or confusion of the issues, the judge could have determined the slight logical relevance was outweighed by the harm caused and thus [was] legally irrelevant." *Id.* Clearly, how Appellant interacted with other judges involved a collateral issue. We cannot fault the trial judge for excluding this testimony.[8] *Id.* We determine the trial court did not abuse its discretion in excluding the testimony in question. Plain error review is not warranted. *Roper,* 136 S.W.3d at 900. Point Three is denied.

In his fourth and last point on appeal Appellant asserts the trial court plainly erred in sustaining the State's objection to Jerry Stromer's ("Mr. Stromer") "testimony that [Appellant] did not threaten Judge Jacobs in the courtroom." Appellant asserts the trial court's ruling violated his right to present witnesses on his own behalf and "deprived [Appellant] of eyewitness testimony on the only element that was contested in Count II, whether his courtroom conduct constituted a threat." Appellant also asserts "the State opened the door by asking its witnesses whether [Appellant] threatened Judge Jacobs;" accordingly, he maintains the "[e]xclusion of this relevant and probative testimony in the facts and circumstances of

[Appellant's] case resulted in manifest injustice."

Here, during Appellant's direct examination of Mr. Stromer, who was present at the August 13, 2002, hearing, the following exchange took place:

Appellant: August, the date of the hearing, you were there from the beginning to the end of the hearing, correct?

Mr. Stromer: Yes.

Appellant: And did I threaten Judge Jacobs?

Mr. Stromer: No.

The State: Your Honor, object to the question. That's a question that the jury will have to answer.

The Court: That would be correct. Objection sustained, Jury disregard the answer to that. Invades the province of the jury. Issue of whether or not the judge was threatened is the fact that you have to determine.

Appellant: Was there any act that I[did] in that courtroom that day that you thought was a threat?

The State: Again, up to the jury to decide.

The Court: Objection sustained.

Appellant, again, requests plain error review under Rule 20.30. As previously noted, we review plain error claims "under a two-prong standard." *Roper,* 136 S.W.3d at 900. Here, there is little in the record to convince this Court that the trial court committed plain error that is evident, obvious and clear, when it sustained the State's objection to the two

---

**8.** Appellant also argues the State opened the door to such testimony by its comments in opening statement and through its direct examination of Judge Jacobs. In making that assertion Appellant points to the State's comments during opening statement that Appellant "made intentional efforts to avoid having a trial ..." and that "at some point [Appellant] decided that the best way to never go to

trial is to disqualify the judges." He further notes Judge Jacobs's testimony that one of the reasons he did not recuse himself from Appellant's case was because he "was the third judge on [Appellant's] case." This Court fails to see how these references opened the door for testimony about how Appellant had dealt with judges in the past.

questions asked of Mr. Stromer. The trial court's determination on this evidentiary matter did not rise to the level of manifest injustice or miscarriage of justice. "The trial court enjoys considerable discretion in admitting opinion evidence because it is in a superior position to assess the probative value and competency of opinion evidence." *State v. Gardner*, 955 S.W.2d 819, 823 (Mo.App.1997). "Generally, opinion testimony is inadmissible when the trier of fact is as capable as the witness to draw conclusions from the facts provided." *Id.* A lay person may not give an opinion when " 'it has the effect of answering the ultimate issue the jury is to determine.' " *State v. Cason*, 596 S.W.2d 436, 440 (Mo. 1980) (quoting *State v. Linzia*, 412 S.W.2d 116, 120 (Mo.1967)). Here, Plain error review is not warranted. *See Ballard*, 6 S.W.3d at 214. Point Four is denied.

The judgment of the trial court is affirmed.