**STATE of Missouri, Respondent,**

**v.**

**Ray D. WOLFE, Appellant.**

**No. SD 30166.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 19, 2011.

Thomas D. Carver, Springfield, for Appellant.

Chris Koster, Atty. Gen., John W. Grantham, Asst. Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, Chief Judge.

A jury found Ray Wolfe guilty of two counts of tampering with a judicial officer, in violation of § 565.084,[1] based on letters that he sent to two judges.

## Background

Wolfe, who was from southwest Missouri but attending law school in Massachusetts, was cited for traffic violations in Springfield while home for the holidays.[2] He mailed the clerk's office a jury trial demand and a list of conflict dates. For reasons explained at trial but not relevant to this appeal, court dates were scheduled which were inconvenient to Wolfe, who had returned to school, prompting him to send letters to each of the responsible judges. His first letter read, in pertinent part:

> To let you know I use the word "Judge" lightly in your case. Your asshole (traffic cop) wrote me that ticket, committing constructive treason, and perjury of his oath, as you are about to do. If I come down there you damn sure won't want me in your courtroom. I know you have people in the courthouse guarding your sorry "Communist" ass. I told you I am currently "Out OF STATE" and I demand a continuance. This is no longer a request!
>
> . . .
>
> I left that State to get the education so I to be able to fight on there playing field. (In the courtroom) instead of where I have been trained to fight (On the Battlefield) which may be where this winds up if you keep your shit up.
>
> The State of Missouri has failed to provide me with justice, with the securities provided in the Missouri, and United States Constitution, and I will not pay for any injustice in Missouri "Unless it is in BLOOD." So the question is? Do you want to meet me on my turf "The battlefield" —JUDGE. You best leave me out of that State until I get ready to return.

His second letter read, in part, as follows:

> I would refer to you as Judge but you already proved that you are not interested in justice by the warrant you issued. What do you want BLOOD, because that may be what you get.... Injustice breeds contempt, and with judges like you I am really surprised that people have not got together and started a revolution to hang communists like you, the prosecutor and of course your butt buddies that keep you busy.
>
> . . .

---

1. Statutory citations are to RSMo 2000; rule references are to Missouri Court Rules (2009).

2. Wolfe lectured the traffic officer about violating "his constitutional rights" and said he would see the officer "in federal court."

*I know you really do not want me in your courtroom now that you have violated my rights. You have better be glad that no officer stopped me while I was on vacation from college. As I am sure it would have made the headline news. As you might be able to ascertain by now that [sic] I am tired of your shit, and the city of Springfield's shit! If I pay the city of Springfield anything—it will be in BLOOD.*

*Your lying no-good officer started this shit, I will try to make him pay the ultimate price for his lies since you do not have the integrity to do what is just, fair and proper.*

. . .

*[Y]ou are doing nothing more than committing usurpation and tyranny. "Tyranny and usurpation are illegal, and they may be resisted by force, and governments founded thereon may be dissolved in the same manner that people may resist robbers or pirates" (Second treatise of a civil government, p. 170, 174, 177).*

*There is nothing I would like to see more in this country than a good old-fashioned bloody revolution where the people can take the trash out of government and hold them accountable for the tyranny and treason that they have committed. We could once again install a people in government that is for the people and by the people, instead of*

*the communist greedy bastards that are currently serving themselves and their masters.*

*With this being said and forwarded to various agencies, you can take that arrest warrant and shove it up your communist ass!*

The police were contacted after the second letter, which led to Wolfe being charged, tried, and convicted, and ultimately to this appeal asserting three claims of error.

### Claims of Error and Analysis

*# 1—No proof that letters were sent "in Greene County, Missouri"*

Wolfe urges that his convictions fail for want of proof that the letters were sent from Greene County. We disagree.

The state only had to prove those facts necessary to constitute the crime charged. *See State v. Taylor*, 238 S.W.3d 145, 148 (Mo. banc 2007). Location is not a statutory element of tampering with a judicial officer. *See* § 565.084.1. Because location is not a fact necessary to constitute the crime, "the state need not prove beyond a reasonable doubt the location where the crime occurred." *Taylor*, 238 S.W.3d at 148.

Nonetheless, Wolfe relies on text in each verdict-directing instruction stating, per standard MAI–CR form,[3] that "in the

---

**3.** Applicable Missouri Approved Instructions—Criminal (MAI–CR) must be used to the exclusion of other forms. Rule 28.02(c). "[T]he MAI–CR instructional format includes venue as an element of the verdict director." MAI–CR3d 304.02, Note on Use 7. MAI–CR3d 329.85, the approved verdict-directing instruction for this offense, thus reads in part as follows:

> First, that (on)(on or about) [*date* ], in the (City)(County) of _____, State of Missouri, the defendant [*Briefly describe what defendant said or did.*], and . . .

The verdict directors used in this case tracked MAI–CR3d 329.85 in this respect:

> First, that on or about the 16th day of February, 2007, in the County of Greene, State of Missouri, the defendant sent a letter . . .
>
> and
>
> First, that on or about the 7th day of June, 2007, in the County of Greene, State of Missouri, the defendant sent a letter. . . .

County of Greene, State of Missouri, the defendant sent a letter." A similar theory was rejected in *Taylor*:

> Taylor argues that, despite the absence of venue as an element of the crime in section 566.030.1, the inclusion of venue as an element under Missouri Approved Instruction 320.01—which this Court approved—is presumptively correct. When an approved instruction conflicts with a statute, however, the statute prevails. Insofar as the MAI–CR 320.01 makes venue an element of the offense of rape, it is incorrect.

238 S.W.3d at 148 (citations and footnotes omitted). The MAI–CR format, which includes venue in the verdict director although it is not an element of the offense, "results in no prejudice to the defendant because the state assumes a higher burden of proof than required by law." MAI–CR3d 304.02, Note on Use 7. *See also State v. Bradshaw*, 81 S.W.3d 14, 24–25 (Mo.App.2002).

### # 2—No proof that Wolfe threatened the judges

 This complaint boils down to Wolfe's assertion "that some evidence, beyond the content of the letters, is necessary" to prove that he threatened the judges. He particularly notes cases in which judges took the witness stand and testified that they felt threatened. *See, e.g., State v. Adams*, 229 S.W.3d 175 (Mo. App.2007); *State v. McGirk*, 999 S.W.2d 298 (Mo.App.1999). He claims comparable evidence was needed here, but was not adduced in that neither judge testified at trial.

We cannot agree, partly because it is *Wolfe's* state of mind that is the focus of § 565.084, which " 'does not prohibit a statement merely because it happens to alarm the person to whom it is directed,' " but " 'only if its speaker made it with a purpose to *harass, intimidate or influence the person in the context of a judicial proceeding.'* " *Adams*, 229 S.W.3d at 181–82 (quoting *McGirk*, 999 S.W.2d at 302–03). In other words, § 565.084 prohibits certain speech based on " '*the impact it is intended to have on the person to whom it is directed.'* " *Id.* at 182 (quoting *McGirk*, 999 S.W.2d at 302).

In its closing argument, the defense openly conceded that Wolfe was trying to "shock" the judges into taking a judicial action that Wolfe wanted:

> The words of this letter is [sic] inspiring. These are words, that Jeffersonian style words which have been used to inspire people. However, this was not the purpose. *This is for shock. It was for shock value to get the attention of a judge, get the attention of the Court and look at this and take a look and let this man have a continuance,* getting past his days where he's on vacation from law school, where he's going to be home. Don't make him travel 3,000 miles, you know, each time for multiple conferences, accommodate him. It's not that hard, they do it every day.
>
> · · ·
>
> *It's the same language that we're using today to get the attention of an overloaded municipal judge to look at the case and do the right thing.* [our emphasis]

Indeed, as both parties made plain at trial, the only issue was whether the letters were threats or something else.[4] Milder

---

4. The defense argued that Wolfe chose "inspiring" words "from his heroes."

 They came from Martin Luther King, they came from Thomas Jefferson. They came from John Locke, Samuel West, all revolutionary or war people, our Founding Fathers of our country. This is where it came from.

language was deemed a threat in *McGirk*.[5] Wolfe's words support the verdicts here.

### # 3—Adverse inference because the judges did not testify

■ Finally, Wolfe claims the trial court improperly barred him from arguing an adverse inference from the state's failure to call the judges as witnesses. The basis for the trial court's ruling was that the judges were equally available to Wolfe.

■ A trial court has broad discretion in determining whether one party may argue an unfavorable inference from the other party's failure to produce a witness. *State v. Dizer*, 119 S.W.3d 156, 164 (Mo. App.2003). We review for abuse of discretion and find none for several reasons.

First, as the trial court noted, the defense subpoenaed the judges as its own witnesses, but did not call them to testify even after the trial court volunteered to reopen the case for that purpose.[6]

Second, an adverse inference generally assumes "the witness has knowledge of facts and circumstances 'vital to the case.'" *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 702 (Mo. banc 1990); *see also Dizer*, 119 S.W.3d at 165. Virtually no material facts or issues were disputed at trial. The exception, and the decisive issue as to guilt, focused on the state of mind of Wolfe, not the judges. If their feelings were not "vital to the case," the state did not need to offer such proof, rendering inappropriate any adverse inference from its failure to do so.[7]

Third, even if we found an abuse of discretion (which we do not), reversal would be inappropriate because Wolfe has not shown prejudice. *See State v. Talley*, 258 S.W.3d 899, 913 (Mo.App.2008). Jurors knew that the judges did not testify; the state said so in its closing.[8] The defense was allowed to remind the jury of trial testimony indicating that the judges felt more harassed than threatened by Wolfe's letters. A basically cumulative argument on a non-decisive issue was not likely to sway a jury that reached two guilty verdicts in 45 minutes.

These things like liberty, tyrants, blood, this is just firing language that's used to shock and awe people. It's the type of language that gets Americans to stand up and throw British into the ocean. It's the type of language used by Martin Luther King because you've talked people into walking from Selma, Alabama all the way to Montgomery knowing that the highway patrolmen were going to beat the crap out of them when they hit the bridge.

The prosecutor responded in rebuttal closing:

I might have missed some days in history class in high school, but I don't remember Thomas Jefferson ever telling you, "You can take that arrest warrant and shove it up your Communist ass." I don't remember Martin Luther King ever talking about bloody revolutions or paying in justice by blood. He was a peaceful man. He had peaceful demonstrations.

This is not meant to inspire anybody. It's just like what he said, it's meant to shock and awe. It's meant to shock the conscience because it's threatening.

5. *See* 999 S.W.2d at 302 ("Appellant's words, 'I'll take care of you' were not a mere expression of his opinion or feelings. Rather, they were a threat aimed at a particular individual, Judge Fleming.").

6. This also defeats Wolfe's assertion that his Sixth Amendment confrontation right was violated by the court's ruling or the state's failure to call the judges as witnesses.

7. A more likely candidate for adverse inference, since it involved the case's key issue, was the defense's failure to deliver on this opening statement promise: "You'll hear from Mr. Wolfe and he'll say he didn't mean [his letters] to be a threat."

8. We do not consider Wolfe's complaints about the prosecutor's closing argument because they are outside the scope of any of his points relied on.

## Conclusion

Wolfe's claims of error fail. Our state "has a compelling interest in ensuring that its judicial servants are able to execute their functions without fear of threats, intimidation and harassment. Little else is more fundamental to a free society." *McGirk*, 999 S.W.2d at 302. We affirm the judgment and convictions.

RAHMEYER, P.J., and FRANCIS, J., concur.