**STATE of Missouri, Respondent,**

v.

**Keith B. LILES, Appellant.**

**No. 27983.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 15, 2007.

Craig A. Johnston, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Office of Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, Judge.

Defendant Keith Liles appeals his first-degree burglary, first-degree robbery, forcible sodomy, forcible rape, and armed criminal action (ACA) convictions. He challenges certain evidentiary rulings, and the sufficiency of the evidence to convict him of ACA.

### Facts and Procedural Background

Viewed favorably to the verdict, the evidence showed that Tim and K—— shared an apartment and were trying to reconcile their marriage. Someone knocked at their door late one night. Tim was in bed; K—— was watching television in the living room. K—— checked the peephole, saw nothing, and began to open the door. Two men, later identified as defendant and Jaime Molina, forced their way in and shoved K—— to the floor. They claimed to be FBI agents looking for a meth lab. Defendant had some type of gun wrapped

in a towel. Defendant went to the bedroom, forced Tim into the living room, and threw him to the floor next to K——. Defendant stomped and kicked Tim, and jammed his gun barrel into Tim's ear until it bled. Whenever Tim tried to get up, defendant kicked him back down.

Defendant and Molina ransacked the apartment, demanding drugs and cash. They took Tim back to his bedroom and beat him further. Defendant took K—— to the bathroom, put his gun to her head, made her perform oral sex, then raped her. Molina robbed Tim of $28 at knifepoint.

Meanwhile, neighbors heard the commotion and called the police. Officer Steven Manteris arrived at the apartment door just as defendant stepped out, still holding the towel-covered gun, which Officer Manteris thought was a sawed-off shotgun. Officer Manteris drew his own gun, disarmed defendant,[1] and called for backup. When another officer arrived, Manteris turned defendant over to him, entered the apartment, and arrested Molina.

Both victims were scared and upset. Tim's face, head, and back were bruised and bleeding. The apartment was in disarray. K——'s rape exam yielded semen; DNA testing showed it was defendant's.

Defendant and Molina were tried together and convicted of all charges. Their unsuccessful defense theory was that they went to the apartment, not to rob and rape, but to trade paintball equipment for drugs. They claimed Tim, in an effort to ensure they were not cops, offered to prostitute K——. Defendant obliged, performed several sex acts on K——, and tried to pay for her services with paintball equipment. When Tim demanded cash, a fight ensued because defendant had only $20. Defendant eventually won the fight, and was leaving with his paintball gun when the police arrived.

## Point I—Evidentiary Rulings

Defendant challenges the exclusion of evidence relating to two prior incidents: (1) K——'s refusal to let police search the apartment at a "knock-and-talk"[2] 41 days earlier, and an officer's belief that K—— then looked like she might be on drugs; and (2) a 1987 search warrant suggesting that Tim had "hidden" drugs and paraphernalia that he was later convicted of illegally possessing.[3] Defendant claims such evidence may have supported his defense by explaining why the police saw no drug-related evidence in the apartment that night.[4] He argues the knock-and-talk 41 days earlier may have tipped K—— and Tim to hide their drugs or supported defendant's claim that he was there to buy drugs. He argues that if Tim hid drugs in 1987, it might explain why no drugs were seen in his apartment in 2005. The trial court concluded such evidence was collateral and excluded it.

▓▓▓▓ The trial court has broad discretion respecting the relevance and admissibility of evidence. *State v. Adams*, 229 S.W.3d 175, 186 (Mo.App.2007). It is

---

1. Defendant's weapon was found to be a paintball gun.

2. "[A] 'knock and talk' is employed when law enforcement officers receive information relating to illegal drug activity that they believe has merit but is insufficient to obtain a warrant; they go to the residence, knock on the door, talk to whomever answers the door, try to identify who is there, and try to obtain consent to search the residence." *State v. Cromer*, 186 S.W.3d 333, 342 (Mo.App.2005).

3. Defendant was permitted to cross-examine Tim about his two 1988 drug possession convictions, and to argue them in closing as reasons to disbelieve Tim's testimony.

4. The police did not search the apartment for drugs or paraphernalia, but testified that they observed none in plain view.

granted discretion because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant. *Id.* An appellate court must clearly find an abuse of such discretion to interfere with a trial court's evidentiary ruling. *Id.* at 186–87.

■■■ Evidence, although logically relevant,[5] is inadmissible absent legal relevance—*i.e.,* probative value outweighing its risks of unfair prejudice, confusion of issues, misleading the jury, delay, waste of time, or cumulativeness. *State v. Anderson,* 76 S.W.3d 275, 276 (Mo. banc 2002). This means logically relevant evidence is excluded unless its benefits outweigh its costs. *Id.*[6] Further, with respect to the admission of evidence, appellate courts review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 277.

Under these well-established principles of review, we cannot say the trial court abused its discretion in excluding evidence of the 18–year–old search warrant as collateral to the issues being tried. *See, e.g., State v. Wolfe,* 13 S.W.3d 248, 258 (Mo. banc 2000)(victim's fabrication of kidnap story 10 years earlier properly excluded as collateral to trial issues and too remote in time).

■■■ Nor can we fault the trial court for excluding the knock-and-talk evidence. K——'s denial of a search request arguably was inadmissible to prove wrongful conduct. *See State v. West,* 21 S.W.3d 59, 66 (Mo.App.2000); *State v. Slavin,* 944 S.W.2d 314, 319 (Mo.App.1997). The officers apparently lacked probable cause of any crime, made no arrests, and conducted no follow-up after they left. There is scant explanation why an officer thought K—— looked like she might be on drugs, and apparently no showing that he was qualified to so testify. The trial court could have believed the knock-and-talk's slight logical relevance, if any, was outweighed by the risk of prejudice and confusion of issues, rendering it legally irrelevant. *Adams,* 229 S.W.3d at 186; *State v. Hayes,* 88 S.W.3d 47, 60 (Mo.App.2002). The trial court did not clearly abuse its discretion in excluding such evidence. We deny Point I.

## Point II—Sufficiency of ACA Evidence

■■■ The ACA charges were based on Tim being robbed at knifepoint. Defendant challenges his conviction thereof, claiming there was no evidence that he knew Molina had a knife.

In reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court gives great deference to the trier of fact. We accept as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the State that can be reasonably drawn therefrom. We disregard all contrary evidence and inferences. *State v. Miller,* 139 S.W.3d 632, 635 (Mo.App.2004)

■■■ The State correctly notes that there was trial testimony—albeit thin— suggesting defendant's awareness of the knife. Moreover, except in first-degree murder cases,[7] "the only showing required

---

5. " 'Evidence is logically relevant if it tends to prove or disprove a disputed fact or corroborate relevant evidence and relates to a principle issue in the case.' " *Adams,* 229 S.W.3d at 186, *quoting State v. Bowens,* 964 S.W.2d 232, 237 (Mo.App.1998).

6. " 'Even if logically relevant, the trial judge has discretion to limit such evidence if the judge believes the evidence is not legally relevant.' " *Adams,* 229 S.W.3d at 187, *quoting Bowens,* 964 S.W.2d at 238.

7. *See State v. O'Brien,* 857 S.W.2d 212, 217–18 (Mo. banc 1993)(holding that in order to convict a defendant of first-degree murder on a theory of accomplice liability, proof of his own premeditation is required).

as to the culpable mental state of an accomplice is that in aiding the principal in the commission of the offense, he acted with the purpose to promote the conduct of the principal that constituted the offense for which the accomplice is being held liable." *State v. Smith,* 229 S.W.3d 85, 95 (Mo.App.2007). Criminal responsibility for the acts of another does not require a common intent other than the promotion of the commission of an offense. *State v. Hicks,* 203 S.W.3d 241, 245 (Mo.App.2006), *citing State v. Forister,* 823 S.W.2d 504, 507 (Mo.App.1992). To be liable as an aider and abettor, the evidence does not have to establish a defendant's specific knowledge of which particular crime his co-participant will commit. *State v. Robinson,* 196 S.W.3d 567, 570 (Mo.App.2006). A defendant who embarks upon a course of criminal conduct with others is responsible for those crimes which he could reasonably anticipate would be part of that conduct. Proof of any form of participation by the defendant in the crime is sufficient to support a conviction. *Hicks,* 203 S.W.3d at 245; *Robinson,* 196 S.W.3d at 570; *Forister,* 823 S.W.2d at 508.

Applying these principles in *Hicks,* we noted that:

> [T]he State was not required to prove that Defendant intended for Chesher to display a deadly weapon. The State only needed to show that Defendant and Chesher acted together with the purpose to commit a criminal offense. The law of accomplice liability imputes the criminal agency of Chesher to Defendant. *State v. Neel,* 81 S.W.3d 86, 91 (Mo.App. W.D.2002). A defendant who embarks upon a course of criminal conduct with others is responsible for those crimes which he could reasonably anticipate would be part of that conduct. *Forister,* 823 S.W.2d at 508. In this case, it would have been reasonable for Defendant to anticipate that Chesher would display a deadly weapon consider-

ing the particular course of their criminal conduct.

203 S.W.3d at 245–46. We cannot say this jury could not similarly infer, viewing the evidence most favorably to its verdict and "considering the particular course of their criminal conduct," that defendant could have reasonably anticipated Molina's display of the knife, especially since defendant himself brandished an apparent gun the entire time, and held it to K——'s head while forcibly raping and sodomizing her. We deny Point II and affirm the convictions.

PARRISH, P.J.—Concurs.

BATES, J.—Concurs.