STATE of Missouri, Plaintiff–
Respondent,

v.

Edward F. WHITTEMORE,
Defendant–Appellant.

No. SD 28857.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 3, 2009.

Margaret M. Johnston, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary H. Moore, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Edward Whittemore (Appellant) was charged by amended information with committing the crimes of assault in the first degree and armed criminal action (ACA). *See* §§ 565.050, 571.015.[1] These charges arose out of an incident in which Vernon Reed (Reed) stabbed Zachary Whiteley (Victim). The charges against Appellant were based upon an accomplice liability theory. After a jury trial, Appellant was convicted of first-degree assault and acquitted of ACA. Appellant was sentenced to serve 25 years in prison.

Appellant presents two points on appeal. First, he challenges the sufficiency of the evidence to support his conviction for first-degree assault. Second, Appellant contends the trial court committed plain error by failing to reject the verdicts as inconsistent and requiring the jury to deliberate further. Because neither point has merit, the judgment is affirmed.

### Point I

In Appellant's first point, he challenges the sufficiency of the evidence to support his conviction of first-degree assault. On appellate review, this Court must determine whether there was sufficient evidence to permit a reasonable juror to find guilt beyond a reasonable doubt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We must view the evidence and all reasonable inferences derived therefrom in a light most favorable to the verdict and disregard any contrary evidence and inferences. *State v. Goodin*, 248 S.W.3d 127, 129 (Mo.App.2008). Using that standard, the pertinent facts have been summarized below.

---

1. All statutory references are to RSMo (2000). All references to rules are to Missouri Court Rules (2008).

In August 1992, Appellant married his wife, Tami. In October 2005, they resided together in Greene County, Missouri. Victim and his son were permitted to move into the Whittemore's residence. Shortly thereafter, Victim and Tami engaged in a romantic relationship, which resulted in them moving out. Appellant told his father that he was going to kill Victim. Appellant believed he and his wife would eventually reunite, and they saw each other several times per week.

During the separation, Victim and Tami were residing at a motel. Appellant and a friend went to the motel, accompanied by a tow truck and driver, to take a vehicle which Appellant and Tami jointly owned. When she saw what was happening, a disturbance ensued. Victim came out of the motel with a shotgun and pointed it at Appellant and his friend. Thereafter, Appellant stated that he wanted to beat Victim up.

In February 2006, Tami was shot and killed by Victim. He was charged with involuntary manslaughter and ACA. After Tami's death, Appellant stated, at various times, that he wanted to "get" Victim, "pound" him, "kill" him and see him dead.

Reed, who recently had been paroled, began spending time with Appellant on a regular basis after Tami's death. Reed testified that, after Tami was killed, Appellant often talked about how he wanted Victim dead. Appellant went so far as to ask Reed "to help him get [Victim]" which Reed understood to mean that Appellant wanted to kill Victim or hurt him badly.

In exchange for Reed's assistance, Appellant gave Reed a crossbow, money and drugs worth approximately $1,000. While there was no specific plan about what Reed was to do, he understood what Appellant wanted and believed that the crossbow, money and drugs had been given to him in exchange for his future actions.

On May 29, 2006, Appellant spent the day with Reed and Appellant's nephew, Darrel Graves (Graves). The three of them drank and took drugs, including cocaine and methamphetamines. During the day, Appellant took the group to the cemetery where Tami was buried. Later, Graves and Reed rode with Appellant in his car to Victim's trailer house. When the group arrived there, they stayed in the car. Victim was standing on the front porch talking on his phone and later went back inside. There was a discussion between Appellant and Graves that he would be the one to "make the hit" on Victim. Reed was not sure what kind of plan, if any, had been devised by Appellant and Graves. Reed decided that he could not let Graves do anything because he was too young. Therefore, Reed reached into a tackle box that was in the car, pulled out a knife and went up to the trailer door. Appellant and Graves waited in the car for Reed. When Victim stepped out onto the porch, he was stabbed in the abdomen by Reed. The two men struggled and fell off of the porch. Reed broke his collarbone and almost cut off two of his fingers. Victim's small intestines and colon were punctured, requiring later surgical repair to save Victim's life.

After the altercation, Reed returned to the vehicle and told Appellant to drive. On the ride home, Reed explained to Appellant what had just happened. At that time, Reed was residing with his girlfriend. Appellant drove Reed there and dropped him off. Appellant lied to Reed's girlfriend about how he had been injured. Appellant then left and drove to a motel where he was living at that time. When he arrived there, he noticed that Reed's bloody shoes were in the back of the car. Appellant cleaned off the shoes and returned them to Reed that same day.

That evening, Reed was arrested on an unrelated domestic violence charge. A few days later, he was questioned about Victim's stabbing. Once DNA evidence linked Reed to the crime, he admitted his involvement. In a statement to police, Reed said that he stabbed Victim because Appellant had asked Reed to do it.

In Appellant's first point, he contends the evidence was insufficient for a reasonable juror to find beyond a reasonable doubt that Appellant acted in concert with Reed. Appellant argues that no reasonable juror could have found that Appellant aided or encouraged Reed's assault on Victim. This Court disagrees.

 In the amended information, Appellant was charged with first-degree assault and ACA on an accomplice liability theory. "The law of accessory liability emanates from statute, as construed by the courts." *State v. Barnum*, 14 S.W.3d 587, 590 (Mo. banc 2000). In pertinent part, § 562.041 states that "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." § 562.041.1(2). The evidence need not show the defendant personally committed every element of the crime. *State v. Burch*, 939 S.W.2d 525, 529 (Mo. App.1997). The doctrine of accomplice liability, as set forth in § 562.041.1(2), applies to any of the innumerable potential acts intended by one person to assist another person in criminal conduct. *Barnum*, 14 S.W.3d at 591. The purpose of this subsection of the statute is to make an individual, who could not be guilty of a crime based solely on his own conduct, guilty as an accessory. *Id.* at 590. Since Missouri eliminated the distinction between princi-

pals and accessories, all persons who act in concert to commit a crime are equally guilty. *State v. Molina*, 251 S.W.3d 398, 400 (Mo.App.2008).

 In *State v. McGowan*, 789 S.W.2d 242 (Mo.App.1990), the western district of this Court explained accomplice liability in this way:

> Aiders and abettors who act with common purpose with active participants in the crime incur criminal liability by any form of affirmative advancement of the enterprise. Indicia of aiding and abetting include presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. A defendant's presence at the scene and his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. Proof of any form of participation by a defendant in the crime is sufficient to support a conviction.

*Id.* at 243 (citations omitted). When a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be part of that conduct. *State v. Robinson*, 196 S.W.3d 567, 570 (Mo.App.2006). The evidence need not establish a defendant's specific knowledge of which particular crime his co-participant will commit. *Id.*

 While mere presence at the crime scene or refusing to interfere is insufficient to support a conviction, encouragement is sufficient. *Barnum*, 14 S.W.3d at 591. Encouragement plays a sufficiently active role in the criminal act that liability may be validly imposed because it is the equivalent of conduct that, by any means, countenances or approves the criminal actions of another. *State v. Richardson*, 923 S.W.2d 301, 318 (Mo. banc 1996).

Viewed in a light most favorable to the verdict, there was sufficient evidence from which a reasonable juror could have found that Appellant aided or encouraged Reed to assault Victim. Since the time of Tami's death, Appellant had been very angry with Victim. Appellant had repeatedly threatened to kill or injure Victim. To that end, Appellant enlisted Reed's aid. Appellant gave Reed items having a $1,000 value to ensure his assistance. On the day the assault took place, Appellant drove Reed to Victim's residence. There was discussion in the car that Graves was going to "make the hit" on Victim. When Reed intervened, however, Appellant acquiesced and waited in the car while Reed approached Victim with a knife. After the assault, Appellant drove Reed home. When the men arrived there, Appellant lied to Reed's girlfriend about how Reed had gotten his injuries. Later, when Appellant discovered Reed's bloody shoes in the car, Appellant cleaned them and immediately returned them to Reed.

This evidence was sufficient to prove Appellant's liability as an accomplice. He affirmatively advanced the enterprise by being involved with Reed before, during and after the assault. Appellant was present at the scene and affirmatively promoted the assault by asking Graves to "make the hit" on Victim. Appellant could have reasonably anticipated that either Graves or Reed would react to that request. Appellant's inaction when Reed left the car armed with a knife provides ample support for that reasonable inference. After the assault, Appellant assisted Reed in fleeing from the scene. By lying to Reeds' girlfriend and cleaning the bloody shoes, Appellant also helped cover up the assault through his own words and deeds. Appel-

lant's actions constituted sufficient encouragement to meet the legal requirements for accomplice liability. *See Barnum*, 14 S.W.3d at 591. Point I is denied.

### Point II

In Appellant's second point, he contends the verdict finding him guilty of first-degree assault is inconsistent with the verdict finding him not guilty of ACA. Appellant argues that the trial court committed plain error by not rejecting the verdicts and sending the jury back to deliberate further.[2]

Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The defendant bears the burden of proving that a manifest injustice or miscarriage of justice has occurred. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App. 2004). A request for plain error review involves a two-step process. *State v. Stallings*, 158 S.W.3d 310, 315 (Mo.App.2005). First, an appellate court must determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo. App.2005). Absent a finding of facial plain error, this Court should decline further review of the claim. *Stallings*, 158 S.W.3d at 315. On the other hand, "[i]f plain error is found, we proceed to the second step to consider whether the error actually

2. To be properly preserved for appellate review, a claim that a jury's verdicts are inconsistent must be presented to the trial court before the jury is discharged. *State v. Flem-*

*ons*, 144 S.W.3d 877, 881 (Mo.App.2004); *State v. Pelz*, 845 S.W.2d 561, 565 (Mo.App. 1992). Defendant failed to do so, so he is limited to a request for plain error review.

resulted in manifest injustice or a miscarriage of justice." *Id.* at 315–16.

■ In order to establish facial plain error, Appellant bears the burden of showing that the jury's verdicts in this case were, in fact, inconsistent. *State v. Bell,* 62 S.W.3d 84, 93 (Mo.App.2001). It is settled law that, if the offense for which the defendant was acquitted requires proof of a unique element distinct from the elements of the crime for which he was found guilty, the verdicts cannot be inconsistent. *See State v. Flemons,* 144 S.W.3d 877, 882 (Mo.App.2004); *State v. Haslar,* 887 S.W.2d 610, 614 (Mo.App.1994); *State v. Avila,* 866 S.W.2d 500, 501 (Mo.App.1993). So long as the crimes have different elements, a jury's verdict does not have to be logically consistent. *Flemons,* 144 S.W.3d at 882.

In the case at bar, Instruction No. 6 required the jurors to find that the offense of first-degree assault had occurred if Reed "attempted to kill or cause serious physical injury to [Victim] by stabbing him...." Instruction No. 7, on the other hand, required the jurors to find that the offense of ACA had occurred if Reed committed first-degree assault "by or with or through, the knowing use or assistance or aid of a dangerous instrument" as defined by that instruction. Comparing the two instructions, it is apparent that the jurors were not required to decide whether Victim was stabbed with a "dangerous instrument" in order to find Appellant guilty of first-degree assault. In that respect, the elements the jurors had to find in order to convict Appellant of first-degree assault were different and distinct from the elements required to find Appellant guilty of ACA. Even assuming *arguendo* that the two verdicts are logically inconsistent, they are not legally inconsistent or contradictory. *See Avila,* 866 S.W.2d at 501. Therefore, the trial court was not required to reject the verdicts and send the jurors back to deliberate further.

In conclusion, Appellant has failed to facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. Consequently, this Court declines to engage in plain error review. Point II is denied.

The judgment of the trial court is affirmed.

BARNEY, J., and SCOTT, P.J., concur.