

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101010 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Elizabeth B. Hogan |
| DANIELLE JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 10, 2015 |

### Introduction

Appellant Danielle Johnson ("Johnson") appeals from the judgment of the trial court entered upon a jury verdict finding him guilty of first-degree robbery. Johnson was convicted of violating Section 569.020[1] on a theory of accomplice liability for acting with another to forcibly steal while displaying what appeared to be a deadly weapon. The trial court sentenced Johnson as a persistent offender to twenty-five years in the Missouri Department of Corrections. On appeal, Johnson alleges that insufficient evidence exists to support his conviction. Specifically, Johnson argues that there was no evidence that he intended to aid in a robbery committed with the use of a deadly weapon or that he was aware his accomplice was in possession of a deadly weapon. Because there was sufficient evidence from which a jury reasonable could have

---

[1] All statutory citations are to RSMo 2000.

concluded that Johnson, acting with the purpose of promoting the commission of a robbery, aided the gunman in planning, committing, or attempting to commit the robbery, we affirm the judgment of the trial court.

## Factual and Procedural History

The evidence viewed in the light most favorable to the verdict is as follows. Monsignor John McCarthy ("Monsignor McCarthy") is a priest at St. Mary of Victories Church. Monsignor McCarthy inherited a significant sum of money when his brother passed away. Almost every day, Monsignor McCarthy would withdraw cash from the bank, interview persons seeking help in the parish hall of his church, and distribute this money to people who needed financial assistance. Monsignor McCarthy also provided community members with bus passes and grocery store gift cards. Johnson received financial assistance from Monsignor McCarthy for about one year between 2011 and 2012. However, on or about February 11, 2012, Monsignor McCarthy told Johnson he would no longer provide him with financial assistance.

On February 13, 2012, Monsignor McCarthy was returning to the church with cash, four Schnucks gift cards, and four weekly Metro passes in his pockets. As Monsignor McCarthy opened the back door of his car to retrieve groceries, he felt something rubbing on his back. Monsignor McCarthy turned around and saw a man facing him wearing a black cap, a scarf over his face, and a black coat.[2] The man held a pistol to Monsignor McCarthy's chest and told him not to move. The gunman then proceeded to go through the pockets of Monsignor McCarthy's shirt and pants, taking a wallet containing more than $200, four Schnucks gift cards, and four Metro passes. During the robbery, Monsignor McCarthy's assistant, Steven Love ("Love"), saw what was happening and began shouting at the gunman. The gunman called for Love to "come

---

[2] The man who robbed Monsignor McCarthy is not identified in the record. He is referred to as "the man" and "the gunman" throughout this opinion.

2

here," but Love continued to shout and refused to go to where the gunman was standing. When Love did not comply, the gunman took off running. Love chased after the gunman until he saw the gunman turn down an alley. Love then saw a Dodge Neon emerge from the alley with the gunman riding in the passenger seat. Love later identified the Dodge Neon to the police as belonging to Johnson.

Later that day, police officers went to Johnson's home and observed the Dodge Neon that Love had described. The officers told Johnson they were conducting an investigation. Johnson admitted that the Dodge Neon was his, but initially claimed he had been home all day with his mother. The officers told Johnson that money had been stolen at a church downtown and a witness saw his car leaving the scene of the crime. Johnson then admitted he had driven to the church to get money from Monsignor McCarthy. Johnson said he waited but never saw Monsignor McCarthy, so he drove back home. Upon further questioning, Johnson admitted that while he was waiting for Monsignor McCarthy in a parking lot near the church, a man he did not know approached him and asked him about Monsignor McCarthy's routine. Johnson told the man about Monsignor McCarthy's "daily comings and goings," "what he does," and "when he gets [to the church] with money." Johnson also volunteered, "I didn't rob the priest, I didn't have the gun." Johnson made these admissions before the police officers told Johnson that Monsignor McCarthy had been robbed.

The police officers took Johnson to the police station where he was searched and questioned. During this search, police officers found two Metro passes and two Schnucks gift cards on Johnson's person. Johnson said that while he was waiting for Monsignor McCarthy, the same man with whom he had discussed Monsignor McCarthy's routine got into the passenger side of Johnson's car and asked him for a ride. Johnson agreed and drove the man a few blocks.

3

When the man got out of the car, the man gave Johnson the two Schnucks gift cards and two Metro passes that were found on Johnson's person. During this interview with a police officer, Johnson stated, "My goose is cooked… I deserve everything I get for letting that man rob the priest."

Johnson was charged with first-degree robbery and armed criminal action as a prior and persistent offender. The jury convicted Johnson of first-degree robbery and acquitted him of armed criminal action. Johnson was sentenced to twenty-five years in the Missouri Department of Corrections. This appeal follows.

## Points on Appeal

In his sole point on appeal, Johnson challenges the sufficiency of the evidence to support his conviction for first-degree robbery. Specifically, Johnson argues that there was insufficient evidence from which a reasonable jury could find he had the requisite *mens rea* to support a conviction for first-degree robbery under the theory of accomplice liability.

## Standard of Review

In examining the sufficiency of evidence, we are limited to a determination of whether there is sufficient evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998). The appellate court may not act as a "super juror" with veto powers. Id. Rather, the reviewing court gives great deference to the trier of fact and accepts as true all of the evidence favorable to the State, including favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. Id. We will affirm the trial court's judgment if, upon viewing the evidence and inferences in favor of the verdict, there is sufficient evidence from which a

4

reasonable jury could have found Johnson guilty of first-degree robbery beyond a reasonable doubt.  Id.

Johnson posits that insufficient evidence exists to support his conviction for first-degree robbery because no evidence was presented at trial that he intended to aid in a robbery committed with the use of a deadly weapon.  Without some evidence that Johnson knew the gunman was going to rob Monsignor McCarthy using a deadly weapon, Johnson insists he cannot be held liable as an accomplice for first-degree robbery.

In support of his argument, Johnson first directs this Court to Section 562.051, which states:

> Except as otherwise provided, when two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and his own accountability for an aggravating or mitigating fact or circumstance.

Section 562.051.  The crime of robbery is divided into two degrees.  First-degree robbery, defined in Section 569.020.1, occurs when a person "forcibly steals property and in the course thereof he, or another participant in the crime . . . [d]isplays or threatens the use of what appears to be a deadly weapon or a dangerous instrument."  In contrast, second-degree robbery, as defined in Section 569.030.1, occurs when a person "forcibly steals property."  Thus, the aggravating factor that raises the robbery in this case to the level of first-degree robbery is the display of a deadly weapon.  Johnson argues that under Section 562.051, "the jury… is to consider the defendant's guilt or innocence as to each degree of the offense independently from other defendants who might be liable for the same offense."  State v. White, 622 S.W.2d 939, 945 (Mo. banc 1981).  Johnson maintains that he is guilty only of second-degree robbery because

5

there was no evidence to support a finding that he was aware the gunman possessed a deadly weapon.

Johnson maintains that this case is analogous to State v. Smith, 229 S.W.3d 85 (Mo. App. W.D. 2007). In Smith, the Western District considered whether a defendant who had been convicted of first-degree robbery was entitled to a jury instruction on the lesser included offense of second-degree robbery. The court stated that the requisite *mens rea* of an accomplice for the offense of first-degree robbery is that the accomplice act with the purpose of promoting a robbery with the display or threatened use of a deadly weapon. Id. at 96-97. The court stated that a jury could have inferred from the evidence that the accomplice did not know the principal would display a deadly weapon in the commission of the robbery. Id. at 97. As a result, the court held that the defendant was entitled to an instruction on the lesser included offense of second-degree robbery. Id.

We find Smith to be distinguishable from this case. The issue before the court in Smith was whether the trial court erred in refusing to instruct the jury on second-degree robbery as a lesser included offense of first-degree robbery. Thus, the relevant question was whether a jury *could have* reasonably inferred from the evidence that the accomplice did not know the principal would use a deadly weapon in the commission of the robbery. Id. In making this determination, the court was required to view the evidence in the light most favorable to the appellant. Id. at 92. In contrast, the relevant question before us is whether sufficient evidence exists to support Johnson's conviction. Johnson did not request a jury instruction on the lesser included offense of second-degree robbery at trial, nor does he raise that point on appeal. As a result, we review the evidence in the light most favorable to the verdict, considering all favorable inferences and disregarding all evidence and inferences contrary to the verdict. Chaney, 967 S.W.2d at 52.

To the extent that Smith can be read to permit accomplice liability for first-degree robbery only if the accomplice has knowledge of the principal's display or threatened use of a deadly weapon, Smith is in clear contradiction with this Court's previous holdings on accomplice intent. The law of accessory liability emanates from statute, as construed by the courts. State v. Barnum, 14 S.W.3d 587, 590 (Mo. banc 2000). Accessory liability is governed by Section 562.041, which states in relevant part:

> A person is criminally responsible for the conduct of another when . . . [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he or she aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Section 562.041.1(2). The Missouri Supreme Court has held that "Section 562.051 does not create any elements of intent in addition to that of Section 562.041." White, 622 S.W.2d at 945 (Mo. banc 1981). Missouri has eliminated the distinction between principal and accessory liability, such that all who act in concert are equally culpable for each other's conduct. State v. Whittemore, 276 S.W.3d 404, 407 (Mo. App. S.D. 2009). A defendant who embarks on a course of criminal conduct with others is responsible for any crimes he could reasonably anticipate would be part of the conduct. Id. "The evidence need not establish a defendant's specific knowledge of which particular crime his co-participant will commit." Id.

In State v. Forister, this Court considered the requisite intent to hold an accomplice criminally responsible for the conduct of a principal. State v. Forister, 823 S.W.2d 504 (Mo. App. E.D. 1992). In that case, the accomplice and two principals planned to burglarize a house with which the accomplice was familiar. Id. at 506. The accomplice chose the victim for the principals because he had performed landscaping work at the victim's house and knew it was secluded. Id. The accomplice then drove the principals to the house, waited in the car as one of the principals committed robbery with a gun, and drove the principals away from the house. Id.

7

The accomplice was convicted of first-degree robbery, but claimed on appeal he only had intended to aid in a burglary, not an armed robbery. Id. at 507. In affirming the conviction of the accomplice for first-degree robbery on the theory of accomplice liability, this Court considered Section 562.041 and held that the only shared intent required to find an accomplice criminally responsible for the conduct of a principal is the intent to promote the commission of *an* offense. Id. (emphasis added). In Forister, we stated, "[a] defendant does not need to possess the intent to commit the underlying felony in order to be convicted as an aider or abettor." Id. Rather, proof of any form of participation in a crime is sufficient to support a conviction. Id. at 508. Since the accomplice planned the burglary, drove the principals to the site of the burglary, and drove the principals away from the scene of the crime, there was sufficient evidence to find the accomplice guilty of first-degree robbery. Id.

The Southern District has similarly held that the only intent required for accomplice liability is the intent to aid the principal in the commission of an offense. State v. Hicks, 203 S.W.3d 241 (Mo. App. S.D. 2006). In State v. Hicks, the principal and accomplice asked the victim for a ride after a party. Id. at 243. Upon reaching their planned destination, the accomplice and principal robbed the victim while the principal pointed a gun at the victim's face. Id. The Southern District held that the State was not required to prove that the accomplice intended for the principal to display a deadly weapon. Id. at 245. Rather, the State was only required to prove that the accomplice intended for the principal to commit an offense. Id. The court stated that "[a] defendant who embarks upon a course of criminal conduct with others is responsible for those crimes which he could reasonably anticipate would be part of that conduct." Id. at 246. The accomplice in Hicks chose to aid the principal in stealing from the victim. Because it would have been reasonable for the accomplice to anticipate that the principal

8

would display a deadly weapon while stealing from the victim, the evidence was sufficient to support his conviction for first-degree robbery under a theory of accomplice liability. Id.

The holdings in Forister and Hicks are consistent with several other Missouri cases which have upheld convictions on the theory of accomplice liability. In these cases, Missouri courts have repeatedly held that the only showing of intent required for conviction under a theory of accomplice liability is that a defendant who embarks upon a criminal course of conduct with another is responsible for crimes he could reasonably anticipate would be part of the conduct. See, e.g. State v. Liles, 237 S.W.3d 636 (Mo. App. S.D. 2007) (court upheld conviction for armed criminal action on theory of accomplice liability because defendant could have reasonably anticipated principal's display of a knife); State v. Coons, 743 S.W.2d 112 (Mo. App. W.D. 1988) (court upheld first-degree robbery conviction on theory of accomplice liability even though accomplice claimed not to have known the principal committed a robbery – much less a robbery with the use of a deadly weapon – until the accomplice and principal were driving away from the scene of the robbery); State v. Jones, 296 S.W.3d 506, 510 (Mo. App. E.D. 2009) (court upheld first-degree robbery conviction on theory of accomplice liability, stating "proof that the defendant knew the principal had robbed someone and that the defendant acted as a getaway car is sufficient evidence of participation to support a finding of accomplice liability").

Viewing the evidence in the light most favorable to the verdict, we hold that there was sufficient evidence in this case from which a jury could convict Johnson of first-degree robbery on a theory of accomplice liability. Johnson was essential to planning the robbery because he was familiar with Monsignor McCarthy's schedule and knew Monsignor McCarthy would be carrying a significant amount of money. Johnson shared that information with the gunman, admitting to police officers that on the day of the robbery, he gave the gunman information about

9

Monsignor McCarthy's routine – "his daily comings and goings," "what he does," and "when he gets [to the church] with money." Johnson waited near the church while the gunman robbed Monsignor McCarthy and acted as a getaway driver. Johnson was sitting in his parked car in a parking lot near the church while the robbery occurred. The gunman, while being chased by Monsignor McCarthy's assistant, ran from the church parking lot to Johnson's car and got in Johnson's passenger seat. Johnson immediately drove the gunman away from the church. The gunman then gave Johnson two of the four Schnucks gift cards and two of the four Metro passes that the gunman had stolen from Monsignor McCarthy. Johnson knew Monsignor McCarthy had been robbed. And when police officers questioned Johnson, he stated, "I didn't rob the priest, I didn't have the gun," before Johnson was told that Monsignor McCarthy had been robbed. Later, Johnson told officers, "My goose is cooked… I deserve everything I get for letting that man rob the priest." The record contains evidence that Johnson was essential to planning the robbery of Monsignor McCarthy and drove the getaway car. See Forister, 823 S.W.2d 504 (upholding conviction for first-degree robbery on a theory of accomplice liability where accomplice was essential to planning robbery and drove getaway car).

Given the evidence in the record, the jury reasonably could have concluded that Johnson, with the purpose of promoting the commission of a robbery, aided the gunman in planning, committing, or attempting to commit the robbery. Under established Missouri precedent, the State was not required to prove specifically that Johnson intended to assist a robbery in which a deadly weapon would be displayed or used. Sufficient evidence exists in the record allowing a jury to reasonably find that Johnson chose to embark upon the robbery of Monsignor McCarthy with the gunman, and could have reasonably anticipated that a deadly weapon would be displayed or used in the robbery.

10

## Conclusion

Because sufficient evidence exists in the record to support Johnson's conviction for first-degree robbery on the theory of accomplice liability, we affirm the judgment of the trial court.

_____

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs