

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD77681 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 10, 2015 |
| PIERRE M. WARD, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable William B. Collins, Judge

Before Special Division: James E. Welsh, Presiding Judge, Gary D. Witt, Judge and
Andrea Vandeloecht, Special Judge

Appellant Pierre M. Ward ("Ward") was convicted by a jury of first-degree robbery, Section 569.020,[1] armed criminal action, Section 571.015, and first-degree burglary, Section 569.160, and sentenced by the trial court to a total of fifteen years of imprisonment. The charges arose out of the break-in and robbery of a home, which, the State argued at trial, was aided and abetted by Ward. Ward now appeals. In his first point, Ward argues there was insufficient evidence that he could have reasonably anticipated or actually knew a gun would be used during the robbery to support his

---

[1] All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

convictions of first-degree robbery and armed criminal action. In his second point, Ward argues the trial court abused its discretion in admitting certain "bad character" evidence that was unfairly prejudicial and undermined his rights to due process and a fair trial. We affirm.

## FACTUAL BACKGROUND[2]

On May 29, 2012, at approximately 4:30 p.m., James Bernard, Sr. ("Bernard") arrived at his home in Cass County with his girlfriend, Donna Hunter ("Hunter"), and his fifteen-year-old grandson. Bernard's grandson went downstairs while Bernard and Hunter watched television. Two men entered Bernard's home through the opened garage door; one was an African-American male holding an automatic or semiautomatic "MAC-10" pistol and the second man, larger than the first, was holding a nine-millimeter Glock firearm. The first man with the MAC-10, identified at trial as Laurent McCambry ("McCambry"), pointed the gun in Bernard's face and told him to get on the floor. McCambry told Bernard that he wanted their money, jewelry, and safe. Bernard responded he could have the money and jewelry but there was no safe. Hunter responded that the jewelry was in her bedroom. McCambry left the living room to search through the bedroom while the second man holding the Glock, identified at trial as Jermaine Williams ("Williams"), stood over Bernard and Hunter with his gun pointed at them.[3]

---

[2] In reviewing whether there was sufficient evidence from which the jury could have found the defendant guilty, this court reviews the evidence in a light most favorable to the verdict and grants all favorable inferences, while disregarding all evidence and inferences contrary to the verdict. *State v. Stover*, 388 S.W.3d 138, 146 (Mo. banc 2012).

[3] There was testimony in the record that the two perpetrators of the crime only had one firearm that they shared between them. For the purposes of this opinion, it is inconsequential whether one or two firearms were actually used in the commission of the crime.

2

McCambry ransacked the bedroom but did not find the jewelry. Hunter volunteered to retrieve her jewelry to give it to the men, which she did. Bernard and Hunter also told the men where their cash was located. Williams retrieved the cash while McCambry stood over the victims with his gun, instructing them not to get up or look around. McCambry took some additional items, including cell phones and house phones, so the victims could not call the police. McCambry then told Bernard and Hunter they must go down to the basement. Bernard believed they would be killed if they went downstairs. Bernard stated he needed to go to the bathroom and proceeded towards the bathroom, and Williams grabbed Bernard's shoulder. A struggle ensued between Bernard, Williams, and McCambry, which resulted in Bernard grabbing a kitchen knife and stabbing McCambry in the shoulder blade, causing him to drop the items he was attempting to steal. McCambry yelled at Williams to shoot Bernard, but Bernard charged at Williams and swung at him.

Both McCambry and Williams fled the house and got into a red, mid-size Chevrolet. Bernard wrote down the license plate number and called police. The knife used to stab McCambry was recovered and the officers canvassed the neighborhood for witnesses. Police spoke with Ward at the residence of Laquisha Fears ("Fears"), who lived across the street from Bernard, and obtained a statement. Ward claimed that he saw a dark red vehicle leave the scene of the crime heading north. Fears also told police she saw a burgundy four-door car at the scene. Police were eventually able to match the blood on the recovered knife through DNA tests to McCambry, who was later arrested. It

3

was then that McCambry informed police regarding the involvement of Ward in the crime.

McCambry told police that Ward and Fears helped plan the robbery. Police obtained phone records and were able to determine that there were multiple calls and messages sent between the phones used by Williams, McCambry and Ward in the days leading up to the robbery, the day of the robbery, and the days following the robbery. When police questioned Ward, he denied knowing McCambry or Williams, but he said that he might have seen them before, and he also denied any involvement in the robbery.

McCambry testified at trial that Ward, McCambry, and Williams had met together on previous occasions in connection with other robberies because Ward provided inside information. Ward and Fears identified Bernard's house as a potential target because Ward believed Bernard was a drug dealer, his house contained a safe, and he left his garage door open. The robbery was planned so that there would be people at home to open the safe.

The day of the robbery, Fears and Ward took Williams and McCambry to Bernard's home in Fears's vehicle to view the scene. During this first trip, Williams and McCambry were riding in the backseat and Williams had a firearm. McCambry was able to see the weapon because Williams placed it in the middle of the seat between them. After arriving at the home and seeing that someone was indeed at home, the four drove to Kansas City to obtain a different vehicle that was not known in the neighborhood. Ward directed them to where he knew there was a vehicle they could use for the robbery, and he wiped it down to remove any fingerprints before giving it to Williams and McCambry.

4

Williams's gun was visible in his pants or shorts at the time Ward was wiping down the car. Williams still had his firearm on him when he and McCambry took Ward's vehicle to go back to Bernard's house to commit the robbery. While McCambry and Williams took the vehicle to Bernard's house, Ward and Fears returned separately to Fears's home across the street from the scene of the crime.

Ward was found guilty by a jury of first-degree robbery, armed criminal action, and first-degree burglary. The court sentenced Ward to concurrent terms of fifteen years for robbery and burglary and five years for armed criminal action. Ward now appeals.

## POINT I

In his first point on appeal, Ward argues the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence and in imposing judgment and sentence for first-degree robbery and the associated count of armed criminal action because there was insufficient evidence presented from which the jury could have reasonably inferred that Ward had advance knowledge that Williams or McCambry had a gun they intended to display or threaten to use in the course of robbing the victims. Ward argues that this ruling is contrary to the United States Supreme Court's holding in *Rosemond v. United States*[4] and a violation of his right to due process of law, guaranteed by the Fourteenth Amendment of the United States Constitution and article I, section 10 of the Missouri Constitution.

---

[4] 134 S. Ct. 1240, 1243 (2014).

## Standard of Review

When reviewing whether sufficient evidence supports a criminal conviction, this Court gives great deference to the trier of fact. *State v. Moore*, 303 S.W.3d 515, 519 (Mo. banc 2010). Appellate review "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009) (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)). In applying this standard, "the Court accepts as true all of the evidence favorable to the state including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.*

*State v. Stover*, 388 S.W.3d 138, 146 (Mo. banc 2012).

## Analysis

Ward argues that his convictions for first-degree robbery and the associated charge of armed criminal action cannot be sustained because there was insufficient evidence from which a reasonable jury could have concluded that Ward had the requisite prior knowledge that a firearm would be used in the commission of the robbery.

The crime of robbery is divided into two degrees. First-degree robbery occurs where a person "forcibly steals property and in the course thereof he, or another participant in the crime ... [d]isplays or threatens the use of what appears to be a deadly weapon or a dangerous instrument." § 569.020.1. Second-degree robbery occurs where a person "forcibly steals property," which omits the element of the use of a deadly or dangerous weapon. § 569.030.1. The charge of armed criminal action occurs where a person commits any felony, with some exclusions not applicable here, with the use, assistance, or aid of a dangerous instrument or deadly weapon. § 571.015.

6

Ward was convicted of robbery in the first-degree and armed criminal action under a theory of accessory liability. Accessory liability is governed by Section 562.041, which states, in relevant part:

> A person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Missouri law no longer recognizes any distinction between principals and accessories; it is now the law that all persons who act in concert are equally guilty. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000) (citing *Bass v. State*, 950 S.W.2d 940, 942 (Mo. App. W.D. 1997)).

> The evidence need not show that the defendant personally committed every element of the crime.... [I]ndicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after the commission of the crime. Proof of any form of participation by defendant in the crime is enough to support a conviction and his presence at the scene, his companionship before and after the offense are circumstances from which one's participation in a crime may be inferred.

*State v. Burch*, 939 S.W.2d 525, 529 (Mo. App. W.D. 1997) (quoting *State v. Carter,* 849 S.W.2d 624, 627 (Mo. App. W.D. 1993)); *see also State v. Barker*, 442 S.W.3d 165, 169 (Mo. App. W.D. 2014) (affirmative participation in a crime may be proven by inference). Further, to support a conviction under accomplice liability, "[t]he evidence need not establish a defendant's specific knowledge of which particular crime his co-participant will commit." *State v. Johnson*, 456 S.W.3d 521, 525 (Mo. App. E.D. 2015) (quoting *State v. Whittemore*, 276 S.W.3d 404, 407 (Mo. App. S.D. 2009)). The accomplice, once

7

he has embarked upon a course of criminal conduct with others, is "responsible for those crimes which he could reasonably anticipate would be a part of that conduct." *Barker*, 442 S.W.3d at 169 (quoting *State v. Robinson*, 196 S.W.3d 567, 570 (Mo. App. S.D. 2006)).

The evidence at trial showed that McCambry and Williams forcibly stole property from Bernard with the use of deadly weapons, which is not disputed by Ward. The evidence at trial also showed that Ward aided McCambry and Williams in the commission of the robbery by (1) providing the target; (2) helping McCambry and Williams prepare to commit the crime; (3) providing the car the perpetrators used to commit the crime; and (4) calling after the crime and giving McCambry and Williams information regarding the police investigation and recovery of the knife with Williams's DNA. Further, there is no plausible argument that Ward could not have reasonably anticipated that a dangerous weapon would be used in the course of the robbery. Williams had a firearm on his person and laid it on the backseat of Fears's car while the four conspirators were scoping out the location of the crime. Williams had a firearm on him and visible in his pants or shorts when Ward provided the vehicle used by Williams and McCambry to commit the robbery. In addition, the circumstances were such that the use of a firearm in the commission of the crime could be reasonably anticipated by Ward. Ward planned the crime specifically to occur when the occupants of the home were present so they could be forced to open the safe under the belief that the victim was a drug dealer.

Accordingly, there was sufficient evidence adduced at trial to support Ward's conviction under the theory of accomplice liability for first-degree robbery and armed criminal action, independent of any actual knowledge a firearm would be used in the commission of the crime. *See e.g., Johnson*, 456 S.W.3d 521 (conviction for first-degree robbery on theory of accomplice liability upheld where evidence showed defendant was essential to planning robbery and drove the getaway car and State was not required to prove specifically that defendant intended to assist a robbery in which a deadly weapon would be used or displayed); *State v. Liles*, 237 S.W.3d 636 (Mo. App. S.D. 2007) (court upheld conviction for armed criminal action on theory of accomplice liability because defendant could have reasonably anticipated principal's display of a knife); *State v. Coons*, 743 S.W.2d 112 (Mo. App. W.D. 1988) (court upheld first-degree robbery conviction on theory of accomplice liability even though accomplice claimed not to have known the principal committed a robbery until accomplice and principal were driving away from scene); *State v. Jones*, 296 S.W.3d 506, 510 (Mo. App. E.D. 2009) (court upheld first-degree robbery conviction on theory of accomplice liability, stating that "proof that the defendant knew the principal actor had robbed someone and that the defendant acted as a getaway driver is sufficient evidence of participation to support a finding of accomplice liability").

Despite acknowledging that this is the state of the law in Missouri regarding accomplice liability, Ward argues these principles conflict with the recent United States Supreme Court case of *Rosemond v. United States*. *Rosemond* analyzed a federal criminal statute, 18 U.S.C. § 924(c), which prohibits the using or carrying of a firearm

9

during and in relation to any crime of violence or drug trafficking crime, and considered that statute's interaction with the federal aiding and abetting statute, codified at 18 U.S.C. § 2. 134 S. Ct. 1240, 1243 (2014). The question considered by the Court was what the Government must prove when it charges a defendant of aiding and abetting the offense of using a firearm in relation to a crime of violence or drug trafficking crime. *Id*. As relevant to Ward's argument, the Court held that, under the *federal* aiding and abetting statute, a defendant charged as an accomplice must have advance knowledge that one of his confederates will possess a gun during the commission of the offense. *Id*. at 1249. The Court reasoned that, for the purposes of federal aiding and abetting law, "a person who actively participates in a criminal scheme *knowing its extent and character* intends that scheme's commission." *Id*. (emphasis added). A person who does not know that a firearm will be used does not appreciate the full extent and character of the crime to be committed, whereas a person who has advance knowledge that a firearm will be used in an offense is able to make the relevant legal and moral choice. *Id*.

*Rosemond*, however, is irrelevant to the issues in this case. Nothing in *Rosemond*, suggests that its holding rests on any constitutional requirement or has any application to state criminal laws on accomplice liability; rather, the Court's analysis was merely a question of federal interpretation of the federal aiding and abetting statute. As such, it does not control here even where the federal statute and state aiding and abetting statutes are similar. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State"). Missouri law has

consistently held that an accessory is responsible for the crimes committed by the principal and any crimes that he could reasonably anticipate as a result of his conduct. Nothing in *Rosemond* mandates a contrary result.[5]

Ward also discusses the tension between the principles of accomplice liability under Missouri law and this court's holding in *State v. Smith*, 229 S.W.3d 85 (Mo. App. W.D. 2007). In *Smith,* the defendant was charged as an accomplice in a first-degree robbery and argued that he was entitled to a jury instruction on the lesser included offense of second-degree robbery. *Id*. at 87-88. This court agreed and held that since there was no admission by the defendant of knowledge of the weapon or presence at its acquisition, the jury could find lack of purpose of promoting armed robbery; therefore, the defendant was entitled to the jury instruction on the lesser included offense. *Id*. at 95-97.

*Smith* is likewise inapplicable to the case at bar as it considered a distinct question from the one posed before us. *Smith* considered the issue of whether the defendant was entitled to a jury instruction on a lesser-included offense. In Ward's case, the jury was actually given the instruction on the lesser-included offense, robbery in the second degree. Rather, Ward is arguing only that the evidence adduced at trial was insufficient to support his conviction and that *Smith* supports his contention. *Smith* in fact refutes

---

[5] In addition, the *Rosemond* decision did not address accomplice liability on the theory that the accused may be responsible for the natural and probable consequences of his actions. The Court itself recognized the limited nature of its holding when it stated that "no one contends that a § 924(c) violation is a natural and probable consequence of simple drug trafficking[,] [w]e ... express no view on the issue." 134 S. Ct. at 1248 n.7. Some federal courts have also found that the advance knowledge of a firearm requirement to convict someone of aiding and abetting a violation of § 924(c) is not applicable where the government's theory to convict is that a conspirator is liable for a co-conspirator's reasonably foreseeable use of a firearm during a drug trafficking crime. *See United States v. Young*, 561 Fed.Appx. 85, 92–93 (2d Cir. 2014); *accord United States v. Harper*, 11-20188, 2014 WL 4978663, at *4 (E.D. Mich. Oct. 6, 2014).

11

Ward's argument, as *Smith* found that previous case law requiring a showing of dual accomplice intent was incorrect and should not be followed. *Id*. at 95. *Smith* affirmed that

> the only showing required as to the culpable mental state of an accomplice is that in aiding and abetting the principal in the commission of the offense, he acted with the purpose to promote the conduct of the principal that constituted the offense for which the accomplice is being held liable.

*Id*.

Accordingly, *Smith* did not hold that a defendant cannot be held liable as an accomplice to first-degree robbery where he does not have advance knowledge that a firearm would be present but only that there are *certain circumstances* in which an accomplice to robbery would not have the requisite intent to support a conviction of first-degree robbery. Presumably, this could only occur in cases where the presence of a firearm or other dangerous weapon in a robbery was not the natural and foreseeable consequence of defendant's actions because, where the use of a firearm is the natural and foreseeable consequence, actual knowledge is completely irrelevant to responsibility as an accomplice.[6] *See Whittemore*, 276 S.W.3d at 407 ("When a defendant has embarked

---

[6] We note that there appears to be tension between *Smith* and the law in Missouri that it is not necessary to prove foreknowledge that a weapon would be used to find an accessory liable for first-degree robbery. On the one hand the court in *Smith* recognized that under Missouri law it is unnecessary to prove dual accomplice intent. The court said that to the extent previous cases had held that "an accomplice must not only purposely promote the underlying offense, but must also possess the requisite intent for the underlying offense, they were never good law and should not be followed." *Smith*, 229 S.W.3d at 95. To reiterate the point, the court stated "the only showing required as to the culpable mental state of an accomplice is that in aiding the principal in the commission of the offense, he acted with the purpose to promote the conduct of the principal that constituted the offense for which the accomplice is being held liable." *Id*. The court then continued, however, to consider whether the defendant was entitled to an instruction on the lesser-included offense of robbery in the second degree. In deciding that the answer is yes, *Smith* relied on a Missouri Supreme Court case, *White*, to support its conclusion that under Missouri law, citing Section 562.051, defendants or the State may present aggravating or mitigating evidence regarding a defendant's intent such that an accomplice and principal may be liable to different degrees of the underlying offense.

12

upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be part of that conduct [ . . . ] The evidence need not establish a defendant's specific knowledge of which particular crime his co-participant will commit").

Finally, *even if* the State were required to prove that Ward had advance knowledge that a firearm would be used in the commission of the crime, which it was not, the evidence presented at trial was sufficient such that a reasonable jury could have found that Ward had actual advance knowledge that a firearm would be used in the course of the robbery. Ward provided information to Williams and McCambry so that they could break into and rob Bernard's home at a time when he would be present in the home. Ward was acting under the belief that Bernard was a drug dealer and owned a safe containing valuable items. The robbery was orchestrated such that someone would

*Id*. at 95-96 (citing *State v. White*, 622 S.W.2d 939 (Mo. banc 1981)). We think this reliance on *White* was misplaced.

The appeal in *White* considered the charge of first-degree murder and has since been clarified and overruled by the Court in *O'Brien*. *See State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993). *O'Brien* recognized that, in the context of first-degree murder, accomplice liability is unique in that the State must prove that the accomplice not only intended to aid another in the commission of the crime of homicide, but also that the accessory did so only after deliberating upon the matter. *Id*. at 217-18. First-degree murder requires the State to prove that a person (1) knowingly (2) caused the death of another person (3) after deliberation upon the matter. § 565.020. The Court clarified the "*unique* role of premeditation in the law of accomplice liability" and affirmed that to be held liable as an accomplice to first-degree murder, the State must "ascribe deliberation to the defendant" and "that the defendant had a purpose to aid another in the commission of the crime. *O'Brien*, 857 S.W.2d at 217(emphasis added). The element of deliberation sets first-degree murder apart from other forms of homicide and only where the accused "harbors this most despicable mental state does society inflict its severest punishments." *Id*. at 218. Therefore, "while the act of homicide may be imputed to an accessory, the element of deliberation may not be." *Id*. This "unique" exception in accessory liability for first-degree murder, where a specific state of mind must be proven in order to hold an accomplice equally guilty as the principal, helps prove the rule that under most circumstances (i.e., crimes other than first-degree murder) the accused must only harbor the purpose to aid and abet the underlying offense in order to be held liable as an accessory. So long as the accessory could have reasonably anticipated that the crimes committed by the principal would be a part of the course of criminal conduct aided by the accessory, the evidence need not establish the accessory's specific knowledge of which particular crime a co-participant will commit. *See Whittemore*, 276 S.W.3d at 407. It also necessarily follows that that the State also need not prove the accessory had specific knowledge of the *manner* in which the principal would commit the crime so long as it could have reasonably been anticipated. *See State v. Johnson*, 456 S.W.3d 521, 524-26 (Mo. App. E.D. 2015).

13

definitely be home to locate and open the safe. A gun was present on Williams's person immediately prior to the robbery and was visible on the backseat of the car while they were scoping out the property. Williams possessed the gun, which was visible in his shorts or pants at the time Ward provided him a vehicle to use in the robbery. This information is sufficient to support a finding beyond a reasonable doubt that Ward knew a firearm would be used in the course of the robbery. Accordingly, the trial court did not err in denying Ward's motion for acquittal at the close of evidence.

Point I is denied.

## POINT II

In his second point on appeal, Ward argues the trial court abused its discretion in overruling Ward's objection and permitting a police officer to testify that Ward called Fears a "cash cow" because the testimony was purely bad character evidence that had no relevance to the case and only served to prejudice the jury against Ward for being the type of person who would use Fears for money. Ward argues this violated his rights to due process and a fair trial, guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 10 of the Missouri Constitution.

### Standard of Review

Our standard of review for the admission of evidence is abuse of discretion. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (citation omitted). "This standard gives the trial court broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." *Id*. "The trial judge is also in the best position to weigh the probative value of the

14

evidence against its prejudicial effect." *State v. Williams*, 420 S.W.3d 713, 721 (Mo. App. W.D. 2014). "Only if the error is so prejudicial that it deprived the defendant of a fair trial is reversal warranted." *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial." *Id.*

**Analysis**

Evidence must be both logically and legally relevant to be admitted at trial. *State v. Berwald*, 186 S.W.3d 349, 358-59 (Mo. App. W.D. 2005). Evidence is logically relevant if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial. *Id.* at 358. Evidence is legally relevant if its probative value outweighs the cost, which involves weighing the probative value of the evidence against the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *Id.* at 359.

Ward argues there was no purpose served by allowing, over his objection, the jury to hear his statement to a police officer that Fears was Ward's "cash cow" and the evidence portrayed him as an insensitive person who has little regard for others beyond what he can get from them. Ward argues that because this evidence had no bearing on the issue of Ward's guilt, the evidence was unfairly prejudicial and should have been excluded. The State argues the evidence was both logically and legally relevant because it was probative of Ward's motive to commit the crime and of Ward's identity as an accomplice to the robbery.

First, the State argues that the evidence tends to establish Ward's motive to commit the crime because Ward considered Fears as a source he could exploit for money. Where

15

an accused proclaims he is innocent, motive for committing a crime is logically relevant. *State v. Kennedy*, 107 S.W.3d 306, 311 (Mo. App. W.D. 2003). While Ward's motive for aiding in the robbery would be relevant, the State does not provide a plausible explanation for why Ward's exploitation of Fears or his treatment of her as a "cash cow" was a *motive for robbing Bernard*. It is difficult to understand how this evidence tends to prove Ward's reason or desire for committing the robbery, which is the underlying offense.

The State further argues that the evidence was probative as to the identity of the perpetrators of the robbery because Fears was a neighbor of the victims and Ward was at Fears's house after the robbery. Where identity is in issue, as it is here, evidence that can help establish the identity of the perpetrator is generally admissible. *See State v. Davis*, 211 S.W.3d 86, 88-89 (Mo. banc 2006). The State's theory of the case was that Ward and Fears were the ones who planned the crime and presented the opportunity to Williams and McCambry, who carried it out. Information that Ward considered Fears his "cash cow" was logically relevant to help explain Ward's connection and relationship to Fears. This evidence arguably shows that Ward considered his relationship with Fears to be financially profitable as opposed to a mere friendship or a romantic relationship. It also helped to explain how and why Ward obtained the information regarding the victims from Fears. While the statement cast Ward in a negative light, we believe the probative value of the information outweighed any prejudice. Ward's treatment or regard of Fears would not have had a significant influence on how the jury viewed this crime of violence

16

and robbery.  Accordingly, the information was also legally relevant, and we do not find that its admission constituted an abuse of discretion.

Nonetheless, even if the evidence were found not to be legally relevant, Ward has not and cannot establish that he was prejudiced by the admission of this single statement in light of the substantial evidence at trial that Ward was a knowing and voluntary accomplice in the underlying crime.  Ward was identified by a perpetrator of the robbery as providing the information to target Bernard's house and giving material assistance before and after the crime.  Ward was in a position to have knowledge about the home as he had a relationship with a neighbor (Fears) who lived across the street from the target.  Ward was nearby and observing during the robbery.  Cell phone records also connected Fears and Ward to the two perpetrators of the robbery before and after the crime, even though Ward denied any involvement and denied having even known the perpetrators of the crime.  McCambry and Ward in fact had a relationship that revolved around criminal activity.  McCambry identified what he believed to be Ward's home as the location where Ward provided a vehicle to use in the robbery.  The statement by Ward that he used Fears as a "cash cow," while not flattering to Ward, does not establish that Ward was prejudiced, as there is not a reasonable probability that this statement affected the outcome of trial given the substantial evidence of Ward's participation in the crime.

Point II is denied.

17

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur